IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIONAL CROP INSURANCE SERVICES, INC.,<br>8900 Indian Creek Parkway<br>Suite 600<br>Overland Park, KS 66210<br><br>          Plaintiff,<br><br>    vs.<br><br>OCCIDENTAL FIRE & CASUALTY COMPANY OF NORTH CAROLINA,<br>702 Oberlin Road<br>Raleigh, NC 27605<br>   Serve:  Registered Agent<br>   CT Corporation Systems<br>   1015 15th Street, N.W., Suite 1000<br>   Washington, D.C. 20005<br><br>     and<br><br>CROP1 INSURANCE DIRECT, INC. d/b/a CROP1 INSURANCE, INC.,<br>4532 114th Street<br>Des Mones, IA 50322<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action<br><br>No. _____ |

**COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE
AND DECLARATORY RELIEF**

Plaintiff National Crop Insurance Services, Inc. ("NCIS"), for its claims for relief against defendants Occidental Fire & Casualty Company of North Carolina ("Occidental") and Crop1 Insurance Direct, Inc. d/b/a Crop1 Insurance, Inc. ("Crop1"), alleges and states as follows:

## NATURE OF ACTION

1. This action involves violations of 15 U.S.C. § 1125(a) by Occidental and Crop1 and the tortious conduct of Occidental and Crop1 in procuring proprietary information and property from NCIS and converting that proprietary information and property to their own use.

2. NCIS is a membership service organization composed primarily of crop insurers and their managing general agents. Neither Occidental nor Crop1 is a member of NCIS, and their tortious and injurious conduct toward NCIS started in and around 2003 or 2004 and is continuing.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over Count I of this action pursuant to 28 U.S.C. § 1331, federal question jurisdiction, and over Counts II, III, and IV pursuant to 28 U.S.C. §§ 1367, supplemental jurisdiction, and alternatively 1332, diversity jurisdiction, in that the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs:

   (a) NCIS is a not-for-profit corporation organized under the laws of the State of Kansas with its principal place of business in the State of Kansas.

   (b) Occidental is an insurance company organized under the laws of the State of North Carolina with its principal place of business in the State of North Carolina.

   (c) Crop1 is a corporation organized under the laws of the State of Wyoming with its principal place of business in the State of Iowa.

4. Defendants conduct business in the District of Columbia and, therefore, are subject to personal jurisdiction of this Court. In addition, Occidental is licensed to conduct the business of insurance in the District of Columbia, and Crop1 is its managing general agent.

5. Venue is proper in this district under 28 U.S.C. § 1391(a) in that defendants are subject to personal jurisdiction and thus deemed to reside in this district.

**PARTIES**

6. NCIS is a not-for-profit corporation organized under the laws of the State of Kansas, and it has been and will be affected adversely by Occidental's and Crop1's actions. NCIS conducts its business from its offices at 8900 Indian Creek Parkway, Suite 600, Overland Park, Kansas 66210.

7. NCIS was organized in 1989 through the consolidation of two organizations: the Crop-Hail Insurance Actuarial Association ("CHIAA") which had been formed in 1947, and the National Crop Insurance Association ("NCIA") which had been formed in 1915. As predecessors to NCIS, CHIAA and NCIA had developed various policy forms and procedures for selling and servicing crop-hail insurance to agricultural producers in the United States. These proprietary forms and procedures included insurance policies and applications, underwriting criteria, and loss adjustment procedures. Also, these predecessor organizations had begun the accumulation of a significant amount of statistical information regarding the incidents of hail and wind damage to growing crops in virtually every agricultural township in the United States.

8. Since its formation in 1989, NCIS has continued and expanded the work of CHIAA and NCIA. Just as CHIAA and NCIA had done previously, NCIS compiles and analyzes relevant statistical information provided by members regarding to hail and wind losses, furnishes statistical and actuarial analyses, actuarial formulas, procedures, forms, and information to members and other purchasers, and develops, provides, and publicizes for use by members procedures and forms for adjustment of losses. Since 1989, NCIS has expanded its portfolio of products and services for members in the traditional crop-hail business by pursuing development of new policy forms and procedures for crops previously insured, for developing

forms and procedures with respect to crops not previously insured, and conducting significant scientific research designed to improve the accuracy of the loss adjustment process. NCIS also offers a substantial array of services to its members who write crop insurance under the federal crop insurance program which is regulated, supervised, and partially funded by the Federal Crop Insurance Corporation ("FCIC"), an agency within the United States Department of Agriculture ("USDA"). The statutory framework for the federal crop insurance program is set forth in the Federal Crop Insurance Act, as amended ("FCIA"), 7 U.S.C. § 1501 et seq. As used in this complaint, the term "crop-hail coverage" refers to privately developed crop insurance products for hail and wind damage and related perils, and the term "MPCI coverage" refers to multiple peril crop insurance developed, regulated, and partially funded by FCIC under the FCIA.

9. Occidental is a property and casualty insurer domiciled in the State of North Carolina with its principal place of business at 702 Oberlin Road, Raleigh, North Carolina 27605. In addition to being licensed to conduct the business of insurance in the District of Columbia, Occidental is or has been licensed in at least forty-nine states (all states in the United States other than Hawaii).

10. Crop1 is domiciled in the State of Wyoming and has its principal place of business at 4532 114th Street, Des Moines, Iowa 50322. Crop1 conducts business throughout the United States, and NCIS believes that Crop1 primarily conducts business, either on its own behalf or for Occidental, in the following states:

    (a) By offering crop-hail coverage in Illinois, Indiana, Iowa, Michigan, Minnesota, Nebraska, Texas, Washington, and Wisconsin; and

(b) By offering MPCI coverage in Idaho, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Nebraska, North Dakota, Ohio, South Dakota, Texas, Washington, and Wisconsin.

At all times relevant to the facts alleged in this complaint, Crop1 has been Occidental's managing general agent with respect to selling and servicing crop-hail coverage and MPCI coverage. According to Billy Rose (President and Chief Executive Officer of Crop1), "Crop1 collaborates closely with Occidental, which in turn provides oversight and support" to Crop1. According to Kenneth C. Coon (Senior Vice-President of Occidental), Occidental has "several employees (including myself) who monitor Crop1's financial and operational performance...." Occidental, therefore, cannot claim ignorance of the actions taken in its name by Crop1.

## BACKGROUND FACTS

### A. NCIS'S CREATION AND PROVISION OF PROPRIETARY AND COPYRIGHTED WORKS TO ITS MEMBERS

11. Companies writing crop insurance, whether the traditional crop-hail coverage offered entirely through the private sector or MPCI coverage offered in partnership with the FCIC, require several types of crop risk information in order to offer fair and equitable coverage to American farmers. NCIS historically has researched and provided to its members highly technical crop risk information in order to achieve the following objectives:

(a) To develop their underwriting guidelines so that crop risks may be evaluated adequately prior to executing an insurance contract;

(b) To develop and test accurate loss adjustment procedures to appraise crop damage at any stage of plant growth;

(c) To develop appropriate and adequate loss statistics and insurance policy terms and conditions specific to each crop and location;

> (d) To develop professional training and educational programs for agents, adjusters, farmers, and the agricultural community; and
>
> (e) To develop research programs (generally undertaken by land grant colleges and universities) for the purpose of developing innovative procedures beyond traditional agricultural programs to enhance risk management solutions.

All of the written and electronic materials produced as a result of the foregoing efforts are proprietary to NCIS, and most of these materials also are copyrighted or copyrightable.

12. As a membership service organization, NCIS is funded exclusively by its members in order to provide the foregoing services to its members. For the duration of their membership, NCIS members in good standing are entitled to use all resources and materials developed by NCIS in the conduct of their crop insurance business.

13. NCIS also makes available its crop insurance resources and materials to non-members. However, such availability is dependent upon paying appropriate charges and fees which are set and adjusted from time to time by the NCIS Board of Directors and senior management.

14. Neither Occidental nor Crop1 ever has been a member of NCIS, although Crop1 had access to certain proprietary information and property of NCIS during 2002 and 2003, when it was the managing general agent for ZC Insurance (later known as Converium) in that company's crop insurance business. In 2003, Converium gave NCIS timely notice that it was not renewing its membership for 2004 and ceased being a member in good standing of NCIS as of December 31, 2003, at which point any privilege which Crop1 may have enjoyed for accessing proprietary information and property of NCIS expired. Assuming that Crop1 would

replace Converium as a member of NCIS, NCIS sent Crop1 a billing for 2004 membership dues, but it never paid that billing. Thereafter, Crop1 has represented at various times that it would become a member of NCIS. In fact, NCIS has sent Crop1 at least two membership applications, but Crop1 has never pursued the application process. Further, neither Occidental nor Crop1 ever has paid any fees or other charges for its or their use of the materials converted to their own use, as more fully explained in this complaint.

15. NCIS is an advisory organization and a statistical agent under the insurance laws of the states where Occidental and Crop1 offer crop-hail coverage and MPCI coverage. As an advisory organization and statistical agent, NCIS provides its members the following valuable services in their state-by-state offering of crop-hail coverage:

    (a)    Filing various insurance policies and policy forms (such as applications, endorsements, and policy jackets);

    (b)    Filing periodically final average loss cost ("FALC") data.

16. Various states (such as Nebraska) require insurers to report their loss cost experience to a statistical agent. Company-by-company data then is accumulated, evaluated, and reported as FALC data to state insurance regulatory and supervisory bodies. FALC data permits such state agencies to assess whether a company's proposed premium rates are unreasonably high (and therefore unfair to purchasers) or unreasonably low (and therefore place at risk state guaranty funds as a result of insurance company insolvencies).

17. NCIS has never served as an advisory organization either for Occidental (with respect to business conducted by or through Crop1) or for Crop1.

18. NCIS has never served as a statistical agent either for Occidental (with respect to business conducted by or through Crop1) or for Crop1.

19. Neither Occidental nor Crop1 has ever submitted premium or loss experience data to NCIS.

20. In view of the foregoing, neither Occidental (with respect to business conducted by or through Crop1) nor Crop1 is entitled to assert that NCIS serves as their advisory organization or statistical agent, and neither one is entitled to use NCIS filings with state insurance regulatory and supervisory agencies.

B. **OCCIDENTAL'S AND CROP1'S ILLEGAL, UNAUTHORIZED, AND TORTIOUS ACTS**

21. On or about March 1, 2005, Occidental/Crop1 made a crop-hail coverage filing with the Nebraska Department of Insurance, Property & Casualty Division (the "Nebraska filing"), either by U.S. Mail or electronic mail, which that department received on March 3, 2005, and approved on March 31, 2005. Cory Bremer as a "filing analyst" made this filing, giving an e-mail address at Crop1 ("cory.bremer@crop1insurance.com") and a mailing address at 11631 Polk Street, Omaha, Nebraska 68137. NCIS believes, and therefore alleges, that Mr. Bremer's mailing address is his residence and not an office of either Occidental or Crop1.

22. The Nebraska filing by Occidental/Crop1 made the following affirmative misrepresentations:

    (a) That NCIS was their advisory organization; and

    (b) That NCIS was their statistical agent.

23. The Nebraska filing by Occidental/Crop1 also improperly filed and relied upon the following NCIS forms previously approved by that state's Department of Insurance for use by members of NCIS:

    (a)    2002-NCIS    3    General Provisions

    (b)    2002-NCIS    5    Policy Jacket

    (c)    2005-NCIS    626    Basic Form – Special Provisions – Nebraska

    (d)    1999-NCIS    652    Application for Companion Hail Insurance Coverage and Declaration Page

    (e)    2002-NCIS    653    Optional Endorsement – Companion Plan Hail Insurance

24. The Nebraska filing by Occidental/Crop1 also relied improperly upon the NCIS FALC filings with that state's Department of Insurance, stating: "Rates are calculated based on NCIS approved Final Average Loss Costs ("FALC's")."

25. On or about March 17, 2005, Occidental/Crop1 made a crop-hail coverage filing with the Iowa Insurance Division (the "Iowa filing"), either by U.S. Mail or electronic mail, which NCIS believes that division approved on or about May 10, 2005. Mr. Bremer made the Iowa filing using the same contact information that was in the Nebraska filing.

26. The Iowa filing by Occidental/Crop1 affirmatively misrepresented that NCIS was their advisory organization, and that they were entitled to use NCIS forms and FALCs.

27. The Iowa filing by Occidental/Crop1 also improperly filed and relied upon the following NCIS forms previously approved by that state's Insurance Division for use by members of NCIS:

    (a)    2002-NCIS    3    General Provisions

    (b)    2002-NCIS    5    Policy Jacket

    (c)    2005-NCIS    614    Basic Form – Special Provisions – Iowa

    (d)    1999-NCIS    652    Application for Companion Hail Insurance Coverage and Declaration Page

    (e)    2002-NCIS    653    Optional Endorsement – Companion Plan Hail Insurance

    (f)    2000-NCIS    757    Assignment of Indemnity

28. The Iowa filing by Occidental/Crop1 also submitted substantially identical copies of 2002-NCIS 3 and 2002-NCIS 5, falsely representing that they were forms copyrighted or copyrightable by Occidental.

29. The Iowa filing by Occidental/Crop1 also relied improperly upon the NCIS FALC filings with that state's Insurance Division, stating: "Rates are calculated based on NCIS approved Final Average Loss Costs ('FALC's')."

30. On or about February 1, 2005, Occidental/Crop1 made a crop-hail coverage filing with the Minnesota Department of Commerce (the "Minnesota filing"), either by U.S. Mail or electronic mail, which NCIS believes that department subsequently approved or treated as an effective filing not requiring prior approval. Mr. Bremer made the Minnesota filing with the same contact information that was in the Nebraska and Iowa filings.

31. The Minnesota filing by Occidental/Crop1 affirmatively misrepresented that NCIS was their "rate service organization" and that they were entitled to use NCIS forms and FALCs.

32. The Minnesota filing by Occidental/Crop1 also improperly filed and relied upon the following NCIS forms previously approved or accepted by that state's Department of Commerce for use by NCIS members:

| | | | |
|---|---|---|---|
| (a) | 2002-NCIS | 3 | General Provisions |
| (b) | 2003-NCIS | 3MN | Minnesota Amendatory Endorsement |
| (c) | 2002-NCIS | 5 | Policy Jacket |
| (d) | 2005-NCIS | 622 | Crop Hail Policy - Basic Form – Special Provisions |
| (e) | 2003-NCIS | 652MN | Application for Companion Hail Insurance Coverage and Declaration Page |

(f) 2003-NCIS 653MN Endorsement: Companion Plan Hail Insurance

33. The Minnesota filing by Occidental/Crop1 also submitted substantially identical copies of 2002-NCIS 3, 2003-NCIS 3MN, 2005-NCIS 622, 2003-NCIS 653MN, and 2002-NCIS 5, falsely representing that they were forms copyrighted or copyrightable by Occidental.

34. The Minnesota filing by Occidental/Crop1 also relied improperly upon the NCIS FALC filings with that state's Department of Commerce, stating:

(a) "We have used the NCIS FALC with NO deviations."

(b) "We have used the NCIS crop and policy form factors."

(Emphasis in original.)

35. NCIS discovered the existence of the Nebraska filing on or about June 29, 2005, and its contents on July 8, 2005. NCIS discovered the existence and contents of the Iowa and Minnesota filings on July 11, 2005.

36. NCIS believes that Occidental/Crop1 has made crop-hail coverage filings in the following six states (in addition to those made by them in Nebraska, Iowa, and Minnesota):

(a) Illinois;

(b) Indiana;

(c) Michigan;

(d) Texas;

(e) Washington; and

(f) Wisconsin.

37. Based on a review of Crop1's website (www.crop1insurance.com) and the contents of the Nebraska, Iowa, and Minnesota filings, NCIS believes, and therefore alleges, that Occidental and Crop1 have made either identical or substantially equivalent representations and

11

763432:0027\6531674.1

misrepresentations to state insurance regulatory and supervisory authorities in the six states listed in paragraph 36(a) – (f).

38.    Mr. Bremer sought state regulatory/supervisory filing information from NCIS on April 5 and 14, 2005. On April 5, Mr. Bremer stated that he was making crop hail filings for Occidental in Illinois, Indiana, Michigan, Minnesota, Texas, and Washington, but specifically stated: "We are affiliated with CropUSA's NCIS membership." Since Mr. Bremer made the Occidental/Crop1 filings in Nebraska, Iowa, and Minnesota in February and March 2005, hindsight suggests the likely falsity of this statement, and that he improperly sought information available to a member of NCIS for use by a non-member. Because CropUSA is a member in good standing of NCIS, and because CropUSA's original membership application to NCIS disclosed that it was the managing general agent for Occidental's crop-hail business, the limited information sought by Mr. Bremer (filing numbers individually assigned by the states or by NCIS he mentioned) was provided by NCIS. After discovering, however, that Mr. Bremer made the Nebraska filing for Occidental using a Crop1 e-mail address, NCIS has checked with CropUSA and determined that it is not writing any crop-hail coverage for Occidental, although it previously had made some crop-hail filings for it. Further, after discovering the foregoing, NCIS logged on to CropUSA's website on July 14, 2005 (www.cropusainsurance.com) and found no references to any relationships between it and Occidental or to CropUSA's offering of crop-hail coverage. Mr. Bremer's likely deceit is further revealed (with the benefit of the prior Nebraska, Iowa, and Minnesota filings in hand) by his use of a Crop1 e-mail address in those filings and his use of "cbremer@omahanh.com" in his electronic communications with NCIS.

39. In view of the foregoing, it now is obvious that Occidental and Crop1 have been deceiving state insurance regulatory and supervisory authorities in their filings and that they also have embarked on a course of deceiving NCIS.

40. The Nebraska, Iowa, and Minnesota filings by Occidental/Crop1 (and quite likely their other state filings) and the conduct of their crop-hail coverage business raise implications regarding infringements of copyrighted and/or copyrightable works of NCIS. NCIS, therefore, is investigating such matters and explicitly reserves its right to amend this complaint to assert infringement claims as may become appropriate.

## CLAIMS FOR RELIEF

### Count I
### (Violation of 15 U.S.C. § 1125)

41. NCIS realleges and incorporates herein paragraphs 1-40.

42. Occidental and Crop1 have violated 15 U.S.C. § 1125 in that they have made false or misleading descriptions of fact and false or misleading representations of facts that are likely to cause confusion as to the origin, sponsorship, or approval of their services and commercial activities, or misrepresent the nature, qualities, or characteristics of their services and commercial activities.

43. By reason of the foregoing, Occidental and Crop1 are liable to NCIS for damages and subject to appropriate injunctive and/or declaratory remedies.

### Count II
### (Appropriation of Trade Secrets)

44. NCIS realleges and incorporates herein paragraphs 1-40.

45. The property, forms, procedures, statistical information and processes of NCIS identified in this complaint constitute trade secrets.

46. Occidental and Crop1 have acquired the trade secrets of NCIS through improper means.

47. Occidental and Crop1 have used the trade secrets of NCIS without NCIS's consent, and Occidental and Crop1 knew or had reason to know that the trade secrets had been acquired by improper means.

48. As a direct and proximate result of the foregoing, Occidental and Crop1 are liable to NCIS for damages and are subject to appropriate injunctive and/or declaratory remedies.

### Count III
### (Conversion)

49. NCIS realleges and incorporates herein paragraphs 1-40.

50. Occidental and Crop1 have intentionally taken and used the property of NCIS, to wit, its forms, filings, and statistical information, without permission or justification.

51. As a direct and proximate result of the foregoing, Occidental and Crop1 are liable to NCIS for damages and are subject to appropriate injunctive and/or declaratory relief.

### Count IV
### (Common Law Fraud)

52. NCIS realleges and incorporates herein paragraphs 1-40.

53. As demonstrated herein, Occidental and Crop1 made false representations of material facts to both NCIS and various state insurance regulatory offices.

54. The false representations made by Occidental and Crop1 were known to be false when made and were made with the intent that the false representation be acted and relied upon.

55. As a result of the false representations made by Occidental and Crop1, action were taken by NCIS and certain state insurance regulatory agencies, which actions would not have been taken without those false representations.

56.     As a direct and proximate result of Occidental and Crop1's false representations, NCIS has suffered substantial damages and is entitled to appropriate injunctive and/or declaratory remedies.

### PRAYER FOR RELIEF

Wherefore, NCIS respectfully requests:

(a)     As to Count I, that the Court issue an injunction against Occidental and Crop1 prohibiting each defendant from using any form, filing, or statistical information of NCIS and, because of the willful and malicious nature of the unauthorized use, that the Court enter judgment against Occidental and Crop1 jointly and severally for actual and punitive damages, in an amount to be proven at trial, along with NCIS's attorneys fees and costs of this action.

(b)     As to Count II, that the Court enjoin the appropriation of NCIS's trade secrets and prohibit any further disclosure or use, and, in addition to an injunction, that the Court enter judgment against Occidental and Crop1 jointly and severally for actual damages, caused by the appropriation, in an amount to be proven at trial and because the appropriation is willful and malicious, that the Court enter judgment for exemplary or punitive damages against Occidental and Crop1 along with its attorneys fees and costs of this action.

(c)     As to Counts III and IV, that the Court enter judgment against Occidental and Crop1 jointly and severally for actual damages, in an amount to be proven at trial, but in no event less than the profit realized by or the unjust enrichment of Occidental and Crop1 as a result of their unauthorized and fraudulent use of NCIS's proprietary property. In addition to actual damages, in light of the

intentional misconduct of Occidental and Crop1, that the Court enter a judgment awarding punitive or exemplary damages against Occidental and Crop1, along with its attorneys fees and costs incurred in this action.

(d) For such other and further relief as the Court shall find is just and reasonable.

Dated: July 15, 2005

*[signature]*

MICHAEL TUCCI (# 430470)
Stinson Morrison Hecker LLP
1150 - 18th Street, N.W., Suite 800
Washington, D.C. 20036
Tel: (202) 785-9100; Fax: (202) 785-9163

AND

*[signature]*

P. JOHN OWEN
National Crop Insurance Services, Inc.
8900 Indian Creek Parkway, Suite 600
Overland Park, KS 66210
Tel: (913) 685-2767; Fax: (913) 685-3080

AND

*[signature]*

PENNY R. SLICER
Stinson Morrison Hecker LLP
1201 Walnut, Suite 2800
Kansas City, MO 64106-2150
Tel: (816) 842-8600; Fax: (816) 691-3495

*Attorneys for Plaintiff National Crop Insurance Services, Inc.*