IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIONAL CROP INSURANCE SERVICES, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil Action |
| OCCIDENTAL FIRE & CASUALTY COMPANY OF NORTH CAROLINA, et al., | ) ) ) ) ) | No. 1:05-cv-01417-RWR |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Plaintiff National Crop Insurance Services, Inc. ("NCIS") has moved the Court to enjoin the systematic infringement of its copyrights by defendants Occidental Fire & Casualty Company of North Carolina ("Occidental") and Crop1 Insurance Direct, Inc. d/b/a Crop1 Insurance, Inc. ("Crop1"). As set forth below, the requirements for a preliminary injunction are amply satisfied. An injunction should be issued so that NCIS' protected legal and financial interests are not jeopardized further and so that its goodwill and reputation are not destroyed or permanently injured.

NCIS only seeks preliminary injunctive relief on Count I, Copyright Infringement, of its First Amended Complaint for Damages and for Injunctive and Declaratory Relief ("Amended Complaint"). No interlocutory relief is sought with respect to the claims made in Counts II – V.

In support of its motion and in accordance with LCvR 65.1(c), NCIS has submitted the following declarations made under penalty of perjury pursuant to 28 U.S.C. § 1746 and exhibits thereto:

- Robert W. Parkerson ("Parkerson Decl."), President and Chief Executive Officer of NCIS;

- James M. Crist ("Crist Decl."), Controller of NCIS;

- Therese M. Stom ("Stom Decl."), Director, Actuarial Applications and Insurance Filings for NCIS;

- Shane Weaver ("Weaver Decl."), Crop Insurance Specialist for NCIS; and

- Ben Latham ("Latham Decl."), President of a member of NCIS and also a member of the NCIS Board of Directors.

In light of the authorities and arguments provided below, this evidentiary record warrants entry of a preliminary injunction.

## STATEMENT OF POINTS AND AUTHORITIES

### I.    Statement of Facts

NCIS is utilizing this portion of its memorandum to identify the parties, to describe in general terms the crop insurance business, and to provide a brief overview of defendants' infringing activities. Its particularized discussion of facts establishing its right to a preliminary injunction appear in Part II as part of NCIS' showing that it meets all of the standards for such relief.

### A. The Parties

NCIS is a not-for-profit corporation organized under the laws of the State of Kansas. Its membership includes both insurance companies and managing general agents for insurance companies. NCIS is exclusively funded by its members in order to provide them with highly

DB03/763432

technical crop risk information, materials, and services.  Some of those materials include policy forms and procedures which NCIS has developed for selling and servicing crop insurance, including insurance policies and applications, underwriting criteria, and loss adjustment procedures.  NCIS also compiles and analyzes a significant amount of statistical information provided by its members regarding crop insurance losses and prepares statistical and actuarial analyses and formulas.  NCIS also offers a substantial array of services to its members who write multiple peril crop insurance ("MPCI") under the federal crop insurance program that is developed, regulated, and partially funded by the Federal Crop Insurance Corporation ("FCIC").  Parkerson Decl., ¶¶ 2 – 5, 8; Stom Decl., ¶ 2.

NCIS develops its crop insurance resources and materials for its members, and these materials and resources are available for use by them only while they are members in good standing.  Many of these materials and resources are available as well to non-members, provided that they pay appropriate charges and fees for their use.  Parkerson Decl., ¶¶10 - 11; Crist Decl., ¶¶ 7 - 8.

Almost all states require an insurance company to report information to an advisory organization and/or statistical agent.  Stom Decl., ¶ 2.  NCIS serves as an advisory organization and statistical agent to its members.  Id.  In this role, NCIS provides its members a valuable service by filing with these states various insurance policies and policy forms and by filing periodically final average loss cost ("FALC") data.  Id.  FALC data permits state insurance regulatory authorities to assess whether an insurer's proposed premium rates are unreasonably high (and therefore unfair to purchasers) or unreasonably low (and therefore place at risk state guaranty funds).  Parkerson Decl., ¶¶ 13 - 14.

DB03/763432

Occidental is a property and casualty insurer domiciled in the State of North Carolina. Occidental is licensed to do business in the District of Columbia and every state except Hawaii. Amended Complaint, ¶ 9; Parkerson Decl., ¶ 6.

Crop1 is domiciled in the State of Wyoming, has its principal place of business in Iowa, and conducts business throughout the United States. Crop1 conducts business on behalf of Occidental, and has been Occidental's managing general agent with respect to selling and servicing crop-hail coverage and MPCI coverage. Amended Complaint, ¶ 10. Parkerson Decl. ¶ 7.

Neither Occidental nor Crop1 has ever been a member of NCIS. Parkerson Decl., ¶ 12; Crist Decl., ¶¶ 1 – 2, 9 - 10. Thus, neither has paid the membership dues assessments which support NCIS' efforts to provide technical services to its members, including the proprietary and copyrighted materials which are the subject of this action. Despite the fact that NCIS typically makes such materials available to non-members, Crop1 and Occidental never have paid any fees or other charges for the use of the Registered NCIS Works or any other NCIS copyrighted works. Parkerson Decl., ¶ 12; Crist Decl., ¶ 9.

## B.    Crop Insurance

Crop insurance in the United States began in the 1800s when insurance companies underwrote risks relating to hail damage. Over time, such coverage has been extended to include damage to growing crops from hail, wind, and related perils ("crop-hail coverage").

Traditional crop-hail coverage, however, left America's farmers unprotected against risk of loss from other perils, such as hurricanes, drought, and flooding. Accordingly, as part of

4

Depression Era New Deal legislation, FCIC was established and undertook the writing of MPCI coverage. 7 U.S.C. § 1502(a). Until the 1980s, MPCI coverage was written exclusively by the FCIC. Starting in the 1980s, FCIC began reinsuring MPCI coverage written directly by private insurance companies. 7 U.S.C. § 1508(k)(1). Currently, all MPCI coverage is written directly by private insurers, but reinsured, partially subsidized, and regulated by FCIC.

As explained in the Amended Complaint, NCIS provides services to its members on both types of coverage – traditional crop-hail coverage and MPCI coverage. Defendants' infringing actions involve copying of copyrighted works involving both types of coverage.

## C.    Defendants' Infringing Actions

The Register of Copyrights has issued certificates of registration for each of the NCIS works listed in the Amended Complaint at ¶¶ 12, 26-30 (the "Registered NCIS Works"). Crist Decl., ¶ 3. NCIS enjoys full ownership rights in and to these works and their registrations. Id., ¶¶ 4 – 6; Parkerson Decl., ¶ 9.

As more fully described below, Occidental and Crop1 have copied, publicly distributed, publicly displayed, and/or prepared derivative works of NCIS' proprietary materials related to crop-hail coverage and MPCI coverage, including the twenty-eight Registered NCIS Works, without the permission or authorization of NCIS and in violation of NCIS' copyrights. This infringement has included posting, without authorization, many of the Registered NCIS Works on the Crop1 website (www.crop1insurance.com) where the works have been downloaded or are available to download by other unauthorized users throughout the United States.

DB03/763432

5

## II.  Discussion

### A.  Preliminary Injunction Standards

A plaintiff is entitled to a preliminary injunction when it demonstrates:

> 1) a substantial likelihood of success on the merits; 2) that it would suffer irreparable harm if the injunction is not granted; 3) that an injunction would not substantially injure other parties; and 4) that the public interest would be served by an injunction.

Mova Pharmaceutical Corp. v. Shalala, 140 F.3d 1060, 1067 (D.C. Cir. 1998).  Courts in the District of Columbia employ a sliding scale, under which a particularly strong showing on one factor can compensate for weakness on another.  Health Ins. Ass'n of America v. Novelli, 211 F. Supp.2d 23, 28 (D.D.C. 2002).  Thus, injunctive relief may be issued, for example, when there is a strong showing of success on the merits even if there is a more modest showing of irreparable injury.  Id.  Here, NCIS is entitled to injunctive relief because each factor enumerated above weighs strongly in its favor.[1]

### B.  Factors Warranting Granting NCIS Injunctive Relief

#### 1.  NCIS is likely to succeed on the merits of its copyright claims.

To succeed on its copyright infringement claims, NCIS need only establish that (1) it owns valid copyrights in the works, and (2) defendants copied protected elements of the works.

---

[1] This Court has had occasion to apply the D.C. Circuit's four-factor preliminary injunction test and its sliding scale in prior litigation.  See, e.g., Lenz v. Federal Deposit Ins. Corp., 251 F. Supp.2d 121, 124 (D.D.C. 2003); Corel Corp. v. United States, 165 F. Supp.2d 12, 21 (D.D.C. 2001); and Mylan Pharmaceuticals, Inc. v. Shalala, 81 F.Supp.2d 30, 36 (D.D.C. 2000).

DB03/763432

Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361 (1991); Whitehead v. CBS/Viacom, Inc., 315 F.Supp.2d 1, 8 (D.D.C. 2004).

### a. NCIS owns the copyrights in the Registered NCIS Works.

This motion involves twenty-eight works authored, owned, and copyrighted by NCIS (the "Registered NCIS Works"). Amended Complaint, ¶¶ 12, 26 – 30; Crist Decl., ¶¶ 3 - 6. The Copyright Office has issued registration certificates for each of the Registered NCIS Works, identifying NCIS as the copyright owner. Crist Decl., ¶ 3 and Exs. 1A – 28A. These certificates constitute *prima facie* evidence of the validity of the copyrights and NCIS' ownership. See 17 U.S.C. § 410(c); and see Stenograph L.L.C. v. Bossard Assocs., Inc., 144 F.3d 96, 99 (D.C. Cir. 1998). Any other NCIS original works are also protected by copyright law even if they have not been registered. See 17 U.S.C. § 302(a); WPOW, Inc. v. MRLJ Enterprises, 584 F. Supp. 132, 136 (D.D.C. 1984).

### b. Defendants copied NCIS copyrighted works.

Actionable copying is found when a defendant's work is substantially similar to the plaintiff's work, and the defendant had access to the plaintiff's work. Reader's Digest Ass'n, Inc. v. Conservative Digest, Inc., 821 F.2d 800, 806 (D.C. Cir. 1987). Moreover, copying can be inferred when the second work is nearly identical and there is no evidence suggesting an explanation for the "striking similarity" other than copying. Id.; and see also 4 M. Nimmer & D. Nimmer, Nimmer on Copyright § 13.02[B] (2005) (copying can be inferred solely on the basis of similarity when the similarity is "striking"). Proof of access coupled with substantial evidence of similarity raises the inference of copying in the absence of direct evidence of copying. Whitehead, 315 F. Supp.2d at 8, citing and quoting Nelson v. Grisham, 942 F.Supp. 649, 651

7

DB03/763432

(D.D.C. 1996). In this case, there can be no doubt that actionable copying has occurred and continues to occur.

Mindful of the Court's position that "copyright infringement claims require [it] to look at the 'actual texts [as] the relevant evidence…,'" and that declarations elaborately explaining substantial similarity are irrelevant, <u>Whitehead</u>, 315 F. Supp.2d at 8 n.2 and 10 n.6, NCIS is not burdening this brief with comparisons of actual texts – with any "ours" v. "theirs" analysis. Moreover, defendants' copying is so extensive and obvious that such comparisons are unnecessary. Instead, NCIS simply identifies defendants' infringements of Registered NCIS Works.

### i. Defendants' works are either identical to or strikingly similar to NCIS' copyrighted works.

Defendants' substantial copying of NCIS Registered Works is evident in multiple respects. First, Occidental and Crop1 made identical copies of the Registered NCIS Works listed in paragraph 28 of the Amended Complaint, and submitted these identical copies in their filings with state insurance regulatory authorities. Stom Decl., ¶ 10. Second, Occidental and Crop1 made non-identical but strikingly similar copies of the Registered NCIS Works listed in paragraph 29 of the Amended Complaint. <u>Id.</u>, ¶ 11. The NCIS copyright notice and form number were removed from these Registered NCIS Works, and the name "Occidental Fire & Casualty Company of North Carolina" appears on each. Moreover, a copyright notice identifying Occidental as the copyright owner appears on several of these unauthorized, derivative works. With respect to the Registered NCIS Works listed in paragraph 30 of the Amended Complaint, Occidental and Crop1 prepared derivative works in the form of rate pages based upon the Final Average Loss Cost Analysis created by NCIS. Stom Decl., ¶ 12.

8

Defendants then included copies of these derivative rate pages with their state filings. <u>Id</u>. The critical part of these rate pages – the Final Average Loss Cost Analysis – is identical, and thus demonstrates a striking similarity to the Registered NCIS Works. Defendants' copying can be inferred solely from the striking similarity between the Registered NCIS Works and the works submitted by defendants. In short, defendants have infringed all of the copyrights identified in paragraphs 27 – 30 of the Amended Complaint.

Defendants' infringing activities also extend to Registered NCIS works involving MPCI coverage, as asserted in paragraph 26 of the Amended Complaint. The infringements involve generating identical versions of four NCIS Registered Works and a substantially identical version of another protected work. Weaver Decl., ¶¶ 3 – 4.

As made clear above, virtually all of defendants' infringing activities involve direct copying of the entire text of Registered NCIS Works. The only variations are cosmetic, such as placing a Crop1 logo on the work. When defendants have made more than simply cosmetic changes, they still have copied substantially all of the protected text. NCIS offers one MPCI coverage example and one crop-hail coverage example to demonstrate this point.

NCIS has authored a "Crop Insurance Plan Comparison" for explaining the various types of MPCI coverage plans available. Crist Decl., Exs. 1B – 3B. Defendants' version of this document, Weaver Decl., Ex. 1, is strikingly similar. For instance, in describing "Group Risk Protection (GRP)" and "Income Protection (IP)" plans, the parties' texts are identical, except that NCIS refers to the "insured" or "individual producer" whereas defendants use the personal pronouns "you" and "your."

9

Defendants' "Companion Plan Hail Insurance Provisions" for crop-hail coverage in Nebraska represents another example of substantially identical copying. Their version, Stom Decl., Ex. 3 (2005-NE-CMP), admittedly "is a combination of" NCIS form -- 2002-NCIS 3 and 2005-NCIS 626, Crist Decl., ¶ 3 and Exs. 8B and 13B. In short, whenever defendants have created their own form, it simply is a "cut-and-paste" version of multiple NCIS forms.

### ii.  Defendants' works are substantially similar to NCIS' copyrighted works and Defendants had access to NCIS' copyrighted works.

Because defendants' works are strikingly similar to the Registered NCIS Works, it is not necessary for NCIS to demonstrate anything else to establish that defendants copied the Registered NCIS Works. However, NCIS can also show that defendants had access to the Registered NCIS Works. Crop1 was the managing agent for Converium's crop insurance business in 2002 and 2003. During that time, Crop1 had access to download the Registered NCIS Works from restricted parts of the NCIS website. Crist Decl., ¶ 9; Parkerson Decl., ¶ 12. Moreover, Occidental and Crop1 had access to the Registered NCIS Works through the public filings made by NCIS and its members with the various state insurance regulatory authorities.

### 2.  NCIS will be irreparably harmed if Defendants are not enjoined.

Irreparable harm is harm which cannot be compensated adequately by money damages. Belushi v. Woodward, 598 F. Supp. 36, 37 (D.D.C. 1984). A copyright holder is presumed to suffer irreparable harm as a matter of law when his right to the exclusive use of copyrighted material is invaded. WPOW, Inc. v. MRLJ Enterprises, 584 F. Supp. 132, 138 (D.D.C. 1984). The copyright holder is entitled to a preliminary injunction without a detailed showing of irreparable harm. Id. However, the copyright holder must make a minimal showing of irreparable harm. Belushi, 598 F. Supp. at 37 (D.D.C. 1984). Economic loss alone, such as lost

10

DB03/763432

revenue, does not amount to irreparable harm. Mylan, 81 F. Supp.2d at 42. On the other hand, irreparable harm is shown when the plaintiff demonstrates that injury to its goodwill or business reputation is likely. Morgan Stanely DW, Inc. v. Rothe, 150 F. Supp.2d 67, 77-78 (D.D.C. 2001); see also Mova Pharm., 140 F.3d at 1066-1067 (irreparable harm shown by permanent injury to plaintiff's market share). Irreparable harm is also shown when damages will not be readily ascertainable without injunctive relief. Morgan Stanley DW, 150 F. Supp.2d at 77.

NCIS is entitled to a preliminary injunction because, as a copyright holder, it is presumed to suffer irreparable harm. It also can make more than a minimal showing of irreparable harm.

First, NCIS risks irreparable harm to its reputation and goodwill without injunctive relief. NCIS members fund NCIS in exchange for the exclusive right to use its proprietary information, materials and Registered NCIS Works. Parkerson Decl., ¶ 10. If defendants remain free to infringe upon the Registered NCIS Works without contributing membership dues, NCIS will be irreparably harmed by the loss of faith and goodwill of its dues paying members. Latham Decl., ¶ 3; Parkerson Decl., ¶ 18. These members may end their memberships, unwilling to fund Occidental's and Crop1's free ride, as well as others who may copy the Registered NCIS Works from Crop1's internet website. See Morgan Stanley DW, 150 F. Supp. 2d at 77 (finding irreparable harm due to permanent loss of customer goodwill).

Second, NCIS has extensive dealings with state insurance regulatory authorities. Parkerson Decl., ¶¶ 13 – 14 and 18.b.; Stom Decl., ¶¶ 2 – 3. The actions of Occidental and Crop1 of which NCIS complains, especially their misuse of Registered NCIS Works, present a serious risk of adversely impacting the working relationships which NCIS has with these regulatory authorities. Parkerson Decl., ¶ 18.b.

11

Finally, third party infringers who copy the Registered NCIS Works from Crop1's internet website may not be readily ascertainable and subject to a suit by NCIS for damages. Parkerson Decl, ¶ 18.c. This means that damages are not readily ascertainable, thus warranting injunctive relief. Morgan Stanley DW, 150 F. Supp. 2d at 77.

### 3.  The injunction will not injure any interested parties.

The requested injunction will not injure the legitimate interests of defendants or of any third-party.

The injunction NCIS seeks will enjoin defendants' systematic violation of its copyrights. Neither defendant nor any third-party has any legitimate interest in the continued systematic violation of NCIS' copyrights in the Registered NCIS Works. See WPOW, 584 F. Supp. at 138 ("the benefits defendants might have received from violating the copyright laws are not benefits to be protected from injury.")

Because the Occidental/Crop1 state crop-hail filings were made earlier this year, Amended Complaint ¶¶ 31 – 63, it is possible that defendants have sold crop-hail coverage to individual farmers using infringing forms. NCIS submits that injunctive relief should not be structured in a fashion that any such policyholders' contractual rights are placed in jeopardy. Accordingly, the preliminary injunction should provide that its issuance does not, and is not intended to, affect, alter, or modify any rights of policyholders or defendants' obligations to them.

DB03/763432

**4. An injunction will serve the public interest.**

The public interest lies with the protection of copyright laws. WPOW, 584 F. Supp. at 138. No countervailing public interests are present. Thus, an injunction will serve the public interest by protecting the copyrights in the Registered NCIS Works. See id.

## III. Terms of Preliminary Injunction

Preliminary injunctive relief, to be meaningful, should include the following terms. Each is directly related to countering defendants' infringing conduct.

First, Occidental, Crop1, and their officers, directors, employees, affiliates, principals, agents, servants, successors and assigns, loss adjusters, and contractors and all those in active concert or participating with them (collectively, "Enjoined Parties") should be enjoined from copying, reproducing, modifying, preparing derivative works of, displaying, or distributing any of the Registered NCIS Works. Such infringing activities have occurred, as the declarations submitted in support of NCIS' motion establish. See, e.g., Weaver Decl., ¶¶ 3 - 5 (copying to websites of Crop1 and affiliates) and Stom Decl., ¶¶ 9 – 12 (copying in state regulatory filings). This sort of injunctive relief has been granted in other litigation. See, e.g., Hart v. Sampley, No. 91-3068, 1992 WL 100135, at *4 (D.D.C. Feb. 4, 1992) (mem.).

Second, the Enjoined Parties should be ordered to return to NCIS all originals, copies, facsimiles, or duplicates of Registered NCIS Works, whether maintained in hard copy or electronically. Such relief is authorized by 17 U.S.C. § 503, and it should preclude further unauthorized copying. The returned materials should be accompanied by certifications from Occidental and Crop1, to be filed with the Court and served on NCIS and to be made under

13

DB03/763432

penalty of perjury, that all copies, however maintained, have been returned and that no copies have been retained.

Third, the Enjoined Parties should be ordered to withdraw all infringing materials in their offering, selling, and servicing of MPCI coverage and crop-hail coverage. At a minimum, such relief would entail removing all infringing materials from websites, withdrawing them from use by sales agents and loss adjusters, and removing them from all training materials used by Enjoined Parties. That such infringements have occurred is evident by website postings of Crop1 and its affiliates. Weaver Decl., ¶¶ 3 – 5. Identical injunctive relief has been granted previously. See, e.g., Cerveceria Modelo, S.A. v. Cuvee, 227 F. Supp.2d 39, 44 (D.D.C. 2002) (ordering defendant to remove copyrighted materials from its website or any other website that it had caused to use the copyrighted works); Merit Diamond Corp. v. Frederick Goldman, Inc., --- F. Supp.2d ---, No. 05 Civ. 5164 (VM), 2005 WL 166084, at * 9 (S.D.N.Y. Jul. 13, 2005) (ordering defendant to withdraw from sale and return all infringing materials). This should present no hardship to defendants. First, as to MPCI coverage sold and serviced by them, reasonable equivalents of many NCIS developed forms are available to defendants for free through the website maintained by the U.S. Department of Agriculture's Risk Management Agency. As participants in the Federal crop insurance program, defendants can download and use those government forms.[2] Second, defendants can develop their own forms – either through use of their own personnel or through hiring others to do the work. Defendants' past free-riding proclivities should not insulate them from the obligations of developing materials for use in the business they elected to enter.

---

[2] These are the steps which any person can take to obtain MPCI coverage materials which do not infringe copyrights of NCIS: (1) log on to the public website of the Risk Management Agency (www.rma.usda.gov), (2) click on "Publications," (3) go to "Directives/Handbooks," (4) download handbooks of interest, and (5) then copy or adapt any forms included therein.

14

DB03/763432

Fourth, the Enjoined Parties should be ordered to withdraw all infringing materials from their state crop-hail filings, as identified in paragraphs 31 – 63 of the Amended Complaint. This would not require Occidental, or Crop1 on behalf of Occidental, to withdraw the entirety of these filings. Nor should this disturb the rights of policyholders, as explained in Part II.B.3., supra; paragraph 4 of the proposed Preliminary Injunction Order specifically protects the rights of policyholders. Instead, this prong of the injunctive relief is narrowly tailored to purge infringing materials from those filings. At a minimum, the following infringing materials would need to be withdrawn:

| Registration No. | Title |
|---|---|
| TX 6-179-218 | General Provisions (2002-NCIS 3) |
| TX 6-179-381 | Crop-Hail Insurance Policy (2002-NCIS 5) |
| TX 6-179-219 | Crop-Hail Policy – Basic Form Special Provisions Iowa (2002-NCIS 614) |
| TX 6-179-385 | Crop-Hail Policy – Basic Form Special Provisions Iowa (2005-NCIS 614) |
| TX 6-179-220 | Crop-Hail Policy – Basic Form Special Provisions Nebraska (2002-NCIS 626) |
| TX 6-179-379 | Crop-Hail Policy – Basic Form Special Provisions Nebraska (2005-NCIS 626) |
| TX 6-179-383 | Crop-Hail Policy – Basic Form Special Provisions Minnesota, North Dakota, and South Dakota (2002-NCIS 622) |
| TX 6-179-384 | Crop-Hail Policy – Basic Form Special Provisions Minnesota, North Dakota, and South Dakota (2005-NCIS 622) |
| TX 6-179-221 | Application for Crop-Hail Insurance and Declaration Page (1999-NCIS 655) |

15

| TX 6-179-222 | Application for Companion Hail Insurance Coverage and Declaration Page (1999-NCIS 652) |
| TX 6-179-377 | Application for Companion Hail Insurance Coverage and Declaration Page (2003-NCIS 652MN) |
| TX 6-179-223 | Endorsement to NCIS Crop-Hail Insurance Policy Companion Plan Hail Insurance (2002-NCIS 653) |
| TX 6-179-378 | Endorsement to NCIS Crop-Hail Insurance Policy Companion Plan Hail Insurance Minnesota (2002-NCIS 653MN) |
| TX 6-179-380 | Minnesota Amendatory Endorsement (2003-NCIS 3MN) |
| TX 6-179-382 | Assignment of Indemnity (2000-NCIS 757) |
| TX 6-179-225 | Iowa 2002 Final Average Loss Cost Analysis |
| TX 6-179-224 | Iowa 2004 Final Average Loss Cost Analysis |
| TX 6-179-227 | Nebraska 2002 Final Average Loss Cost Analysis |
| TX 6-179-226 | Nebraska 2004 Final Average Loss Cost Analysis |
| TX 6-179-386 | Minnesota 2002 Final Average Loss Cost Analysis |
| TX 6-179-387 | Minnesota 2004 Final Average Loss Cost Analysis |

Comparable relief has been ordered in other litigation. See, e.g., WPOW, 584 F. Supp. 138 - 139 (ordering impoundment of engineering report defendant submitted as part of its application to the FCC for a new radio station).

In accordance with Fed. R. Civ. P 65(c), NCIS will undertake to provide appropriate security to the extent the Court deems proper. Because NCIS is the injured party, because it is a not-for-profit membership service organization, and because proof of infringement is substantial, only minimal security should be required. Therefore, NCIS proposes security in the amount of

16

$1,000, which it will provide in the form of a check payable to the Registry of this Court pursuant to LCvR 65.1.1 and 67.1.   This Court approved a bond in the identical amount in a copyright infringement case.  Cerveceria Modelo, 227 F.  Supp. 2d at 44.  See also Positive Software Solutions v. New Century Mortgage, 259 F. Supp. 2d 531, 541 (N.D. Tex. 2003).

**IV.  Conclusion**

Every factor favors enjoining defendants from their systematic infringement of copyrights of the Registered NCIS Works.  Because every factor weighs in its favor, NCIS is entitled to injunctive relief in the terms outlined above.

Dated:  August 11, 2005                 Respectfully submitted:

/s/ Michael E. Tucci
MICHAEL TUCCI (# 430470)
Stinson Morrison Hecker LLP
1150 - 18th Street, N.W., Suite 800
Washington, D.C.  20036
Tel: (202) 785-9100; Fax: (202) 785-9163

AND

/s/ P. John Owen by Michael E. Tucci
P. JOHN OWEN
National Crop Insurance Services, Inc.
8900 Indian Creek Parkway, Suite 600
Overland Park, KS  66210
Tel: (913) 685-2767; Fax: (913) 685-3080

17

DB03/763432

AND


Bruce E. Baty by Michael E. Tucci
BRUCE E. BATY
PENNY R. SLICER
Stinson Morrison Hecker LLP
1201 Walnut, Suite 2800
Kansas City, MO 64106-2150
Tel: (816) 842-8600; Fax: (816) 691-3495

*Attorneys for Plaintiff National Crop Insurance Services, Inc.*

18

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Memorandum in Support of Plaintiff's Motion for Preliminary Injunction, the supporting Declarations and a Proposed Order was sent via Federal Express overnight delivery this 11th day of August, 2005 to the following:

Occidental Fire & Casualty Company of North Carolina
c/o Registered Agent
CT Corporation Systems
1015 15th Street, N.W., Suite 1000
Washington, D.C. 20005

Crop1 Insurance Direct, Inc.
d/b/a Crop1 Insurance, Inc.
4532 114th Street
Des Moines, IA 50322


/s/ Michael E. Tucci
Michael E. Tucci