## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **NATIONAL CROP INSURANCE SERVICES, INC.,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action** |
| | ) | |
| **OCCIDENTAL FIRE & CASUALTY COMPANY OF NORTH CAROLINA, et al.,** | ) | **No. 1:05-cv-01417-RWR** |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |


### DECLARATION OF ROBERT W. PARKERSON

I, Robert W. Parkerson, declare, under penalty of perjury and in accordance with 28 U.S.C. § 1746, that the following factual statements are true and correct.

1.    I am the President and Chief Executive Officer of National Crop Insurance Services, Inc. ("NCIS"), the plaintiff in this action against defendants Occidental Fire & Casualty Company of North Carolina ("Occidental") and Crop1 Insurance Direct, Inc. d/b/a Crop1 Insurance, Inc. ("Crop1"). I have been employed at NCIS continuously since 1993 as its President/CEO.

2.    NCIS is a membership service organization composed primarily of crop insurers and their managing general agents. Neither Occidental nor Crop1 is a member of NCIS.

3.    NCIS is a not-for-profit corporation organized under the laws of the State of Kansas, and it has been and will be affected adversely by Occidental's and Crop1's actions.

NCIS conducts its business from its offices at 8900 Indian Creek Parkway, Suite 600, Overland Park, Kansas 66210.

4.    NCIS was organized in 1989 through the consolidation of two organizations: the Crop-Hail Insurance Actuarial Association ("CHIAA") which had been formed in 1947, and the National Crop Insurance Association ("NCIA") which had been formed in 1915.    As predecessors to NCIS, CHIAA and NCIA had developed various policy forms and procedures for selling and servicing crop-hail insurance to agricultural producers in the United States.  These proprietary forms and procedures included insurance policies and applications, underwriting criteria, and loss adjustment procedures.  Also, these predecessor organizations had begun the accumulation of a significant amount of statistical information regarding the incidents of hail and wind damage to growing crops in virtually every agricultural township in the United States.

5.    Since its formation in 1989, NCIS has continued and expanded the work of CHIAA and NCIA.  Just as CHIAA and NCIA had done previously, NCIS compiles and analyzes relevant statistical information provided by members regarding hail and wind losses, furnishes statistical and actuarial analyses, actuarial formulas, procedures, forms, and information to members and other purchasers, and develops, provides, and publicizes for use by members procedures and forms for adjustment of losses.  Since 1989, NCIS has expanded its portfolio of products and services for members in the traditional crop-hail business by pursuing development of new policy forms and procedures for crops previously insured, for developing forms and procedures with respect to crops not previously insured, and conducting scientific research designed to improve the accuracy of the loss adjustment process.  NCIS also offers a substantial array of services to its members who write crop insurance under the federal crop insurance program which is regulated, supervised, and partially funded by the Federal Crop

2

Insurance Corporation ("FCIC"), an agency within the United States Department of Agriculture. As used in this declaration, the term "crop-hail coverage" refers to privately developed crop insurance products for hail and wind damage and related perils, and the term "MPCI coverage" refers to multiple peril crop insurance developed, regulated, and partially funded by FCIC.

6.    I understand that Occidental is a property and casualty insurer incorporated in the State of North Carolina with its principal place of business at 702 Oberlin Road, Raleigh, North Carolina 27605.

7.    I understand that Crop1 is incorporated in the State of Wyoming and has its principal place of business at 4532 114th Street, Des Moines, Iowa 50322. Based on the text of its website (www.crop1insurance.com), I believe that Crop1 primarily conducts business, either on its own behalf or as the managing general agent for Occidental, in the following states:

    a. By offering crop-hail coverage in Illinois, Indiana, Iowa, Michigan, Minnesota, Nebraska, Texas, Washington, and Wisconsin; and

    b. By offering MPCI coverage in Idaho, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Nebraska, North Dakota, Ohio, South Dakota, Texas, Washington, and Wisconsin.

8.    Companies writing crop insurance, whether the traditional crop-hail coverage offered entirely through the private sector or MPCI coverage offered in partnership with the FCIC, require several types of crop risk information in order to offer fair and equitable coverage to American farmers. NCIS historically has researched and provided to its members highly technical crop risk information in order to achieve the following principal objectives:

    a. To develop their underwriting guidelines so that crop risks may be evaluated adequately prior to executing an insurance contract;

b.  To develop and test accurate loss adjustment procedures to appraise crop damage at any stage of plant growth;

c.  To develop appropriate and adequate loss statistics and insurance policy terms and conditions specific to each crop and location;

d.  To develop professional training and educational programs for agents, adjusters, farmers, and the agricultural community; and

e.  To develop research programs (generally undertaken by land grant colleges and universities) for the purpose of developing innovative procedures beyond traditional agricultural programs to enhance risk management solutions.

All of the written and electronic materials produced as a result of the foregoing efforts are proprietary to NCIS, and most of these materials also are copyrighted or copyrightable.

9.      The Register of Copyrights has issued certificates of registration for a variety of NCIS works which are relevant to the actions of Occidental and Crop1 (collectively, the "Registered NCIS Works").  Other declarations being submitted to the Court by NCIS cover this matter in greater detail.

10.     As a membership service organization, NCIS is funded exclusively by its members in order to provide the foregoing services to its members.  For the duration of their membership, NCIS members in good standing are entitled to use the resources and materials developed by NCIS in the conduct of their crop insurance business, including copyrighted works such as the Registered NCIS Works.  Restricted availability of NCIS resources and materials is clearly expressed to members and non-members alike, and the conditions applicable to such availability are clearly stated and agreed to by its members.  The limitations on availability of NCIS resources and materials are explicitly set forth, for example:

4

a.  In copyright notices included in published materials, which typically recite:

Permission is hereby granted to Members in good standing of NCIS whose Membership Class (and service area, if membership is limited by service area) entitles them to receive copies of the enclosed or attached material to reprint, copy or distribute such NCIS copyrighted material in its present form solely for their own business use and solely to employees, adjusters or agents who are under contract with them, and as a condition to receiving such copies, such employees, adjusters and agents agree that they will not reprint, copy or distribute any such NCIS copyrighted material to any other person and/or company, or transform into another work such NCIS copyrighted material, without prior written permission of NCIS.

b.  In accessing resources and materials through the "NCIS Store" portion of

the NCIS website (www.ag-risk.com), which states:

The items at this site are available only to Full Members and Service Members of NCIS. Service Members may purchase items for the membership categories they have selected and for which they pay assessments. The prices listed reflect only the costs of reproduction, storage, and handling. They do not reflect research and development costs, which are funded by NCIS members through their annual premium-based assessments. For information about becoming an NCIS member, call 800-951-6247.

c.  In transferring NCIS resources and materials to members via a secured

internet connection, whose introduction makes clear:

The NCIS File Transfer (FTU) is a browser based application designed to facilitate the transfer of files between NCIS and its members (and other affiliated entities). The FTU is a secured application – you will need a User ID and password to access it. If you already have a User ID and password, click the "Enter" button below to access the FTU.

11.  NCIS also makes available its crop insurance resources and materials to non-

members. However, such availability is on terms and conditions, including the payment of

appropriate charges and fees, which are set and determined from time to time by NCIS.

12.  Crop1 never has been a member of NCIS, never has paid membership

assessments, and never has paid the required charges and fees for limited access to certain

5

Registered NCIS Works, NCIS proprietary information, and NCIS copyrightable material. Occidental never has been a member of NCIS, never has paid membership assessments, and never has paid the required charges and fees for limited access to certain Registered NCIS Works, NCIS proprietary information, and NCIS copyrightable material. From December 2001 through year end 2003, Crop1 had access to certain Registered NCIS Works, NCIS proprietary information, and NCIS copyrightable material as the managing general agent for ZC Insurance (later known as Converium), a member in good standing of NCIS until December 31, 2003. Similarly, Occidental derivatively had some limited benefits of membership for some portion of 2005 as a result of its relationship with Crop USA Insurance Agency, Inc. ("Crop USA"), a member in good standing of NCIS. However, Occidental's rights to certain Registered NCIS Works, NCIS proprietary information, and NCIS copyrightable materials extended only to insurance contracts sold by Crop USA and not those sold by Crop1. Crop1's President and Chief Executive Officer (Mr. Billy Rose) at least twice has represented to us that Crop1 planned to join NCIS. On one occasion I sent Mr. Rose an application after he told me (by phone) that Crop1 would join. Also, I had our Controller (Mr. Jim Crist) send him one on another occasion after I spoke with Mr. Rose. We never have received, however, a membership application from Crop1. At present, neither Crop1 nor Occidental has any right to access or use Registered NCIS Works, NCIS proprietary information, and NCIS copyrightable material.

13.    NCIS is an advisory organization and a statistical agent under the insurance laws of the states where Occidental and Crop1 offer crop-hail coverage and MPCI coverage. As an advisory organization and statistical agent, NCIS provides its members the following valuable services in their state-by-state offering of crop-hail coverage:

6

a. Filing various insurance policies and policy forms (such as applications, endorsements, and policy jackets);

b. Filing periodically final average loss cost ("FALC") data.

14.    All states require insurers to report their loss cost experience to a statistical agent. NCIS is a licensed statistical agent for all states for purposes of reporting FALC data.  In reporting FALC data, company-by-company data is accumulated, evaluated, and then reported to state insurance regulatory and supervisory bodies.  FALC data permits such state agencies to assess whether a company's proposed premium rates are unreasonably high (and therefore unfair to purchasers) or unreasonably low (and therefore place at risk state guaranty funds as a result of insurance company insolvencies).

15.    NCIS has never served as an advisory organization either for Occidental (with respect to business conducted by or through Crop1) or for Crop1.

16.    NCIS has never served as a statistical agent either for Occidental (with respect to business conducted by or through Crop1) or for Crop1.

17.    Neither Occidental nor Crop1 has ever submitted premium or loss experience data to NCIS.

18.    I have read the original and amended complaints filed by NCIS against Occidental and Crop1.  My unequivocal belief is that the actions of Occidental and Crop1, as detailed in the complaints, have injured and continue to injure NCIS.  Awarding damages to NCIS, while appropriate, is not a sufficient remedy for injuries to NCIS.  I take this position for several reasons:

a. Membership goodwill is critical to us as a membership service organization.  Our members' dues assessments funded initial development of the Registered NCIS

Works, and they fund our continuing efforts to maintain their utility in members' crop insurance businesses. If we cannot protect the legal integrity for use of these materials in the fashion intended by and for our members, we face a legitimate, serious concern of erosion of membership support.

b.  As a licensed advisory organization and statistical agent working regularly with state insurance regulatory and supervisory authorities, the integrity of our work and of our organization is quite important. I am genuinely concerned that misuse of Registered NCIS Works, which (along with our other materials) are proprietary to us, could have an adverse impact on our working relationships with, and how we are viewed by, such state authorities.

c.  Finally, when non-members post on websites their infringing versions of Registered NCIS Works, we have no basis for calculating our economic losses when third-party users of those websites download and then use our works.

In view of the foregoing matters, my belief is that the actions of Occidental and Crop1 have caused and are causing NCIS injury, and that a damage award by itself would be insufficient to compensate us fully for that injury.

August _10_, 2005

Robert W. Parkerson