**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **NATIONAL CROP INSURANCE** | ) | |
| **SERVICES, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action** |
| | ) | |
| **OCCIDENTAL FIRE & CASUALTY** | ) | **No. 1:05-cv-01417-RWR** |
| **COMPANY OF NORTH CAROLINA,** | ) | |
| **et al.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**FIRST AMENDED COMPLAINT FOR DAMAGES AND FOR INJUNCTIVE**
**AND DECLARATORY RELIEF**

Plaintiff National Crop Insurance Services, Inc. ("NCIS"), for its claims for relief against

defendants Occidental Fire & Casualty Company of North Carolina ("Occidental") and Crop1

Insurance Direct, Inc. d/b/a Crop1 Insurance, Inc. ("Crop1"), alleges and states as follows:

**NATURE OF ACTION**

1.      This action involves violations of 17 U.S.C. § 101 et seq. by Occidental and

Crop1 because they have infringed valid copyrights of NCIS.  It also involves violations of 15

U.S.C. § 1125(a) by Occidental and Crop1 and the tortious conduct of Occidental and Crop1 in

procuring proprietary information and property from NCIS and converting that proprietary

information and property to their own use.

2.      NCIS is a membership service organization composed primarily of crop insurers

and their managing general agents.  Neither Occidental nor Crop1 is a member of NCIS, and

their tortious and injurious conduct toward NCIS, as recently discovered, started in and around 2003 or 2004 and is continuing.

## JURISDICTION AND VENUE

3.     The Court has jurisdiction over Count I pursuant to 28 U.S.C. § 1338, copyright actions, over Count II pursuant to 28 U.S.C. § 1331, federal question jurisdiction, and over Counts III, IV, and V pursuant to 28 U.S.C. §§ 1367, supplemental jurisdiction, and alternatively 1332, diversity jurisdiction, in that the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs:

    a.    NCIS is a corporation organized under the laws of the State of Kansas with its principal place of business in the State of Kansas.

    b.    Occidental is an insurance company organized under the laws of the State of North Carolina with its principal place of business in the State of North Carolina.

    c.    Crop1 is a corporation organized under the laws of the State of Wyoming with its principal place of business in the State of Iowa.

4.     Occidental is licensed to conduct the business of insurance in the District of Columbia, and Crop1 is its managing general agent.  Further, defendants conduct business in the District of Columbia and, therefore, are subject to personal jurisdiction of this Court.

5.     Venue is proper in the District of Columbia under 28 U.S.C. §§ 1391(a) and 1400(a) in that defendants are subject to personal jurisdiction and thus deemed to reside or be found in this district.

## PARTIES

6.     NCIS is a not-for-profit corporation organized under the laws of the State of Kansas, and it has been and will be affected adversely by Occidental's and Crop1's actions.

NCIS conducts its business from its offices at 8900 Indian Creek Parkway, Suite 600, Overland Park, Kansas 66210.

7.     NCIS was organized in 1989 through the consolidation of two organizations:  the Crop-Hail Insurance Actuarial Association ("CHIAA") which had been formed in 1947, and the National Crop Insurance Association ("NCIA") which had been formed in 1915.    As predecessors to NCIS, CHIAA and NCIA had developed various policy forms and procedures for selling and servicing crop-hail insurance to agricultural producers in the United States.  These proprietary forms and procedures included insurance policies and applications, underwriting criteria, and loss adjustment procedures.  Also, these predecessor organizations had begun the accumulation of a significant amount of statistical information regarding the incidents of hail and wind damage to growing crops in virtually every agricultural township in the United States.

8.     Since its formation in 1989, NCIS has continued and expanded the work of CHIAA and NCIA.  Just as CHIAA and NCIA had done previously, NCIS compiles and analyzes relevant statistical information provided by members regarding hail and wind losses, furnishes statistical and actuarial analyses, actuarial formulas, procedures, forms, and information to members and other purchasers, and develops, provides, and publicizes for use by members procedures and forms for adjustment of losses.  Since 1989, NCIS has expanded its portfolio of products and services for members in the traditional crop-hail business by pursuing development of new policy forms and procedures for crops previously insured, for developing forms and procedures with respect to crops not previously insured, and conducting significant scientific research designed to improve the accuracy of the loss adjustment process.  NCIS also offers a substantial array of services to its members who write crop insurance under the federal crop insurance program which is regulated, supervised, and partially funded by the Federal Crop

Insurance Corporation ("FCIC"), an agency within the United States Department of Agriculture ("USDA"). The statutory framework for the federal crop insurance program is set forth in the Federal Crop Insurance Act, as amended ("FCIA"), 7 U.S.C. § 1501 et seq. As used in this complaint, the term "crop-hail coverage" refers to privately developed crop insurance products for hail and wind damage and related perils, and the term "MPCI coverage" refers to multiple peril crop insurance developed, regulated, and partially funded by FCIC under the FCIA.

9.      Occidental is a property and casualty insurer domiciled in the State of North Carolina with its principal place of business at 702 Oberlin Road, Raleigh, North Carolina 27605. In addition to being licensed to conduct the business of insurance in the District of Columbia, Occidental is or has been licensed in at least forty-nine states (all states in the United States other than Hawaii).

10.     Crop1 is domiciled in the State of Wyoming and has its principal place of business at 4532 114th Street, Des Moines, Iowa 50322. Crop1 conducts business throughout the United States, and NCIS believes that Crop1 primarily conducts business, either on its own behalf or for Occidental, in the following states:

a.      By offering crop-hail coverage in Illinois, Indiana, Iowa, Michigan, Minnesota, Nebraska, Texas, Washington, and Wisconsin; and

b.      By offering MPCI coverage in Idaho, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Nebraska, North Dakota, Ohio, South Dakota, Texas, Washington, and Wisconsin.

At all times relevant to the facts alleged in this complaint, Crop1 has been Occidental's managing general agent with respect to selling and servicing crop-hail coverage and MPCI coverage. According to Billy Rose (President and Chief Executive Officer of Crop1), "Crop1 collaborates

closely with Occidental, which in turn provides oversight and support" to Crop1.  According to Kenneth C. Coon (Senior Vice-President of Occidental), Occidental has "several employees (including myself) who monitor Crop1's financial and operational performance…."  Occidental, therefore, cannot claim ignorance of the actions taken in its name by Crop1.

## BACKGROUND FACTS

**A.    NCIS's Creation and Provision of Proprietary And Copyrighted Works to its Members**

11.    Companies writing crop insurance, whether the traditional crop-hail coverage offered entirely through the private sector or MPCI coverage offered in partnership with the FCIC, require several types of crop risk information in order to offer fair and equitable coverage to American farmers.  NCIS historically has researched and provided to its members highly technical crop risk information in order to achieve the following principal objectives:

    a.    To develop their underwriting guidelines so that crop risks may be evaluated adequately prior to executing an insurance contract;

    b.    To develop and test accurate loss adjustment procedures to appraise crop damage at any stage of plant growth;

    c.    To develop appropriate and adequate loss statistics and insurance policy terms and conditions specific to each crop and location;

    d.    To develop professional training and educational programs for agents, adjusters, farmers, and the agricultural community; and

    e.    To develop research programs (generally undertaken by land grant colleges and universities) for the purpose of developing innovative procedures beyond traditional agricultural programs to enhance risk management solutions.

All of the written and electronic materials produced as a result of the foregoing efforts are proprietary to NCIS, and most of these materials also are copyrighted or copyrightable.

12.    The Register of Copyrights has issued certificates of registration for each of the following NCIS works which are relevant to the actions of Occidental and Crop1 (collectively, the "Registered NCIS Works"):

| Registration No. | Title |
| --- | --- |
| TX 6-179-256 | "Crop Insurance Plan Comparison" (May 2001) |
| TX 6-179-258 | "Crop Insurance Plan Comparison" (Feb. 2003) |
| TX 6-179-257 | "Crop Insurance Plan Comparison" (Dec. 2003) |
| TX 6-179-253 | "Crop Insurance Withdrawal of Claim" (Form 920) |
| TX 6-179-259 | "Simplified Claims Qualification and Notice of Loss Form" (Form M930) |
| TX 6-179-255 | "Power of Attorney" (Form M925) |
| TX 6-179-254 | "MPCI Optional Endorsement High-Risk Land Exclusion Option" (Form 764) |
| TX 6-179-218 | General Provisions (2002-NCIS 3) |
| TX 6-179-381 | Crop-Hail Insurance Policy (2002-NCIS 5) |
| TX 6-179-219 | Crop-Hail Policy – Basic Form Special Provisions Iowa (2002-NCIS 614) |
| TX 6-179-385 | Crop-Hail Policy – Basic Form Special Provisions Iowa (2005-NCIS 614) |
| TX 6-179-220 | Crop-Hail Policy – Basic Form Special Provisions Nebraska (2002-NCIS 626) |
| TX 6-179-379 | Crop-Hail Policy – Basic Form Special Provisions Nebraska (2005-NCIS 626) |

| | |
|---|---|
| TX 6-179-383 | Crop-Hail Policy – Basic Form Special Provisions Minnesota, North Dakota, and South Dakota (2002-NCIS 622) |
| TX 6-179-384 | Crop-Hail Policy – Basic Form Special Provisions Minnesota, North Dakota, and South Dakota (2005-NCIS 622) |
| TX 6-179-221 | Application for Crop-Hail Insurance and Declaration Page (1999-NCIS 655) |
| TX 6-179-222 | Application for Companion Hail Insurance Coverage and Declaration Page (1999-NCIS 652) |
| TX 6-179-377 | Application for Companion Hail Insurance Coverage and Declaration Page (2003-NCIS 652MN) |
| TX 6-179-223 | Endorsement to NCIS Crop-Hail Insurance Policy Companion Plan Hail Insurance (2002-NCIS 653) |
| TX 6-179-378 | Endorsement to NCIS Crop-Hail Insurance Policy Companion Plan Hail Insurance Minnesota (2003-NCIS 653MN) |
| TX 6-179-380 | Minnesota Amendatory Endorsement (2003-NCIS 3MN) |
| TX 6-179-382 | Assignment of Indemnity (2000-NCIS 757) |
| TX 6-179-225 | Iowa 2002 Final Average Loss Cost Analysis |
| TX 6-179-224 | Iowa 2004 Final Average Loss Cost Analysis |
| TX 6-179-227 | Nebraska 2002 Final Average Loss Cost Analysis |
| TX 6-179-226 | Nebraska 2004 Final Average Loss Cost Analysis |
| TX 6-179-386 | Minnesota 2002 Final Average Loss Cost Analysis |
| TX 6-179-387 | Minnesota 2004 Final Average Loss Cost Analysis |

NCIS is undertaking to register additional original and derivative works of authorship which may be, or may become, relevant to the claims asserted herein.

13.    A copyright notice indicating the year of first publication and ownership of the copyright by NCIS has appeared on each of the Registered NCIS Works as published.

14.     Each of the Registered NCIS Works contains copyrightable subject matter under the Copyright Act, 17 U.S.C. § 101 et seq., and constitutes an original work of authorship of NCIS.

15.     Each of the copyrights in the Registered NCIS Works is valid and enforceable, and NCIS owns all right, title, and interest in and to the copyright in each of the Registered NCIS Works.

16.     As a membership service organization, NCIS is funded exclusively by its members in order to provide the foregoing services to its members.  For the duration of their membership, NCIS members in good standing are entitled to use the resources and materials developed by NCIS in the conduct of their crop insurance business, including copyrighted works such as the Registered NCIS Works.  Restricted availability of NCIS resources and materials is clearly expressed to members and non-members alike, and the conditions applicable to such availability are clearly stated and agreed to by its members.  The limitations on availability of NCIS resources and materials are explicitly set forth, for example:

a.     In copyright notices included in published materials, which typically recite:

Permission is hereby granted to Members in good standing of NCIS whose Membership Class (and service area, if membership is limited by service area) entitles them to receive copies of the enclosed or attached material to reprint, copy or distribute such NCIS copyrighted material in its present form solely for their own business use and solely to employees, adjusters or agents who are under contract with them, and as a condition to receiving such copies, such employees, adjusters and agents agree that they will not reprint, copy or distribute any such NCIS copyrighted material to any other person and/or company, or transform into another work such NCIS copyrighted material, without prior written permission of NCIS.

b.     In accessing resources and materials through the "NCIS Store" portion of the NCIS website (www.ag-risk.com), which states:

The items at this site are available only to Full Members and Service Members of NCIS. Service Members may purchase items for the membership categories they have selected and for which they pay assessments. The prices listed reflect only the costs of reproduction, storage, and handling. They do not reflect research and development costs, which are funded by NCIS members through their annual premium-based assessments. For information about becoming an NCIS member, call 800-951-6247.

c.    In transferring NCIS resources and materials to members via a secured internet connection, whose introduction makes clear:

The NCIS File Transfer (FTU) is a browser based application designed to facilitate the transfer of files between NCIS and its members (and other affiliated entities). The FTU is a secured application – you will need a User ID and password to access it. If you already have a User ID and password, click the "Enter" button below to access the FTU.

17.    NCIS also makes available its crop insurance resources and materials to non-members. However, such availability is on such terms and conditions, including the payment of appropriate charges and fees, which are set and determined from time to time by NCIS.

18.    Crop1 never has been a member of NCIS, never has paid membership assessments, and never has paid the required charges and fees for limited access to certain Registered NCIS Works, NCIS proprietary information, and NCIS copyrightable material. Occidental never has been a member of NCIS, never has paid membership assessments, and never has paid the required charges and fees for limited access to certain Registered NCIS Works, NCIS proprietary information, and NCIS copyrightable material. From December 2001 through year end 2003, Crop1 had access to certain Registered NCIS Works, NCIS proprietary information, and NCIS copyrightable material as the managing general agent for ZC Insurance (later known as Converium), a member in good standing of NCIS until December 31, 2003. Similarly, Occidental derivatively had some limited benefits of membership for some portion of 2005 as a result of its relationship with Crop USA Insurance Agency, Inc. ("Crop USA"), a

member in good standing of NCIS.  However, Occidental's rights to certain Registered NCIS Works, NCIS proprietary information, and NCIS copyrightable materials extended only to insurance contracts sold by Crop USA and not those sold by Crop1.  At present, neither Crop1 nor Occidental has any right to access or use Registered NCIS Works, NCIS proprietary information, and NCIS copyrightable material.

19.    NCIS is an advisory organization and a statistical agent under the insurance laws of the states where Occidental and Crop1 offer crop-hail coverage and MPCI coverage.  As an advisory organization and statistical agent, NCIS provides its members the following valuable services in their state-by-state offering of crop-hail coverage:

a.    Filing various insurance policies and policy forms (such as applications, endorsements, and policy jackets);

b.    Filing periodically final average loss cost ("FALC") data.

20.    Various states (such as Nebraska) require insurers to report their loss cost experience to a statistical agent.  Company-by-company data then is accumulated, evaluated, and reported as FALC data to state insurance regulatory and supervisory bodies.  FALC data permits such state agencies to assess whether a company's proposed premium rates are unreasonably high (and therefore unfair to purchasers) or unreasonably low (and therefore place at risk state guaranty funds as a result of insurance company insolvencies).

21.    NCIS has never served as an advisory organization either for Occidental (with respect to business conducted by or through Crop1) or for Crop1.

22.    NCIS has never served as a statistical agent either for Occidental (with respect to business conducted by or through Crop1) or for Crop1.

23.     Neither Occidental nor Crop1 has ever submitted premium or loss experience data to NCIS.

24.     In view of the foregoing, neither Occidental (with respect to business conducted by or through Crop1) nor Crop1 is entitled to assert that NCIS serves as their advisory organization or statistical agent, and neither one is entitled to use NCIS filings with state insurance regulatory and supervisory agencies.

**B.     OCCIDENTAL'S AND CROP1'S ILLEGAL, UNAUTHORIZED, AND TORTIOUS ACTS**

25.     As more fully described below, Occidental and Crop1 have copied, publicly distributed, publicly displayed, and/or prepared derivative works of NCIS's proprietary materials, including the Registered NCIS Works, without the permission or authorization of NCIS in violation of NCIS's copyrights. This infringing activity has included posting, without authorization, many of the Registered NCIS Works on the website of Crop1 (www.crop1insurance.com) where they have been downloaded by or are available to download, by other unauthorized users, or potential users, throughout the United States, including the District of Columbia, and elsewhere in the world where crop insurance is available.

26.     Crop1, for itself and on behalf of Occidental, copied and/or prepared derivative works of numerous works of NCIS relating to MPCI coverage, including the Registered NCIS Works listed below, without the permission or authorization of NCIS:

| Registration No. | Title |
|---|---|
| TX 6-179-256 | "Crop Insurance Plan Comparison" (May 2001) |
| TX 6-179-258 | "Crop Insurance Plan Comparison" (Feb. 2003) |
| TX 6-179-257 | "Crop Insurance Plan Comparison" (Dec. 2003) |
| TX 6-179-253 | "Crop Insurance Withdrawal of Claim" (Form 920) |
| TX 6-179-259 | "Simplified Claims Qualification and Notice of Loss Form" (Form M930) |
| TX 6-179-255 | "Power of Attorney" (Form M925) |

| TX 6-179-254 | "MPCI Optional Endorsement High-Risk Land Exclusion Option" (Form 764) |

Crop1 displayed and distributed the unauthorized copies and/or derivative works on its website at www.crop1insurance.com.  The NCIS copyright notice and form number (where applicable) generally were removed from each of the NCIS works, and the Crop1 logo and form number (where applicable) appear on each of the unauthorized copies and/or derivative works.  Upon information and belief, Crop1 obtained access to the Registered NCIS Works listed above by downloading copies of those documents from a restricted access portion of NCIS's website during the period of time in 2002 - 2003 when it was affiliated with Converium as set forth more fully in paragraph 18 above.

27.    Crop1, for itself and on behalf of Occidental, also copied and/or prepared derivative works of numerous works of NCIS relating to crop-hail coverage, including certain Registered NCIS Works, as set forth more fully below, without the permission or authorization of NCIS.

| Registration No. | Title |
| --- | --- |
| TX 6-179-218 | General Provisions (2002-NCIS 3) |
| TX 6-179-381 | Crop-Hail Insurance Policy (2002-NCIS 5) |
| TX 6-179-219 | Crop-Hail Policy – Basic Form Special Provisions Iowa (2002-NCIS 614) |
| TX 6-179-385 | Crop-Hail Policy – Basic Form Special Provisions Iowa (2005-NCIS 614) |
| TX 6-179-220 | Crop-Hail Policy – Basic Form Special Provisions Nebraska (2002-NCIS 626) |
| TX 6-179-379 | Crop-Hail Policy – Basic Form Special Provisions Nebraska (2005-NCIS 626) |

TX 6-179-383     Crop-Hail Policy – Basic Form Special Provisions Minnesota, North Dakota, and South Dakota (2002-NCIS 622)

TX 6-179-384     Crop-Hail Policy – Basic Form Special Provisions Minnesota, North Dakota, and South Dakota (2005-NCIS 622)

TX 6-179-221     Application for Crop-Hail Insurance and Declaration Page (1999-NCIS 655)

TX 6-179-222     Application for Companion Hail Insurance Coverage and Declaration Page (1999-NCIS 652)

TX 6-179-377     Application for Companion Hail Insurance Coverage and Declaration Page (2003-NCIS 652MN)

TX 6-179-223     Endorsement to NCIS Crop-Hail Insurance Policy Companion Plan Hail Insurance (2002-NCIS 653)

TX 6-179-378     Endorsement to NCIS Crop-Hail Insurance Policy Companion Plan Hail Insurance Minnesota (2002-NCIS 653MN)

TX 6-179-380     Minnesota Amendatory Endorsement (2003-NCIS 3MN)

TX 6-179-382     Assignment of Indemnity (2000-NCIS 757)

TX 6-179-225     Iowa 2002 Final Average Loss Cost Analysis

TX 6-179-224     Iowa 2004 Final Average Loss Cost Analysis

TX 6-179-227     Nebraska 2002 Final Average Loss Cost Analysis

TX 6-179-226     Nebraska 2004 Final Average Loss Cost Analysis

TX 6-179-386     Minnesota 2002 Final Average Loss Cost Analysis

TX 6-179-387     Minnesota 2004 Final Average Loss Cost Analysis

28.     With respect to the Registered NCIS Works listed below, Occidental and Crop1 copied the forms identically and included copies of the forms with their filings with state insurance regulatory and supervisory authorities (such as those in Indiana, Iowa, Michigan, Minnesota, Nebraska, Texas, and Wisconsin) as alleged in paragraphs 31- 63. Upon information

and belief, Crop1 had access to such Registered NCIS Works either through public filings made by NCIS with state regulatory and supervisory authorities or by downloading such materials from a restricted access portion of NCIS's website when Crop1 was affiliated with Converium. The Registered NCIS Works so copied include:

| Registration No. | Title |
| --- | --- |
| TX 6-179-218 | General Provisions (2002-NCIS 3) |
| TX 6-179-381 | Crop-Hail Insurance Policy (2002-NCIS 5) |
| TX 6-179-219 | Crop-Hail Policy – Basic Form Special Provisions Iowa (2002-NCIS 614) |
| TX 6-179-385 | Crop-Hail Policy – Basic Form Special Provisions Iowa (2005-NCIS 614) |
| TX 6-179-220 | Crop-Hail Policy – Basic Form Special Provisions Nebraska (2002-NCIS 626) |
| TX 6-179-379 | Crop-Hail Policy – Basic Form Special Provisions Nebraska (2005-NCIS 626) |
| TX 6-179-383 | Crop-Hail Policy – Basic Form Special Provisions Minnesota, North Dakota, and South Dakota (2002-NCIS 622) |
| TX 6-179-384 | Crop-Hail Policy – Basic Form Special Provisions Minnesota, North Dakota, and South Dakota (2005-NCIS 622) |
| TX 6-179-221 | Application for Crop-Hail Insurance and Declaration Page (1999-NCIS 655) |
| TX 6-179-222 | Application for Companion Hail Insurance Coverage and Declaration Page (1999-NCIS 652) |
| TX 6-179-377 | Application for Companion Hail Insurance Coverage and Declaration Page (2003-NCIS 652MN) |
| TX 6-179-223 | Endorsement to NCIS Crop-Hail Insurance Policy Companion Plan Hail Insurance (2002-NCIS 653) |

TX 6-179-378   Endorsement to NCIS Crop-Hail Insurance Policy Companion
         Plan Hail Insurance Minnesota (2002-NCIS 653MN)

TX 6-179-380   Minnesota Amendatory Endorsement (2003-NCIS 3MN)

TX 6-179-382   Assignment of Indemnity (2000-NCIS 757)

29.  With respect to the Registered NCIS Works listed below, Occidental and Crop1 copied the Registered NCIS Works and prepared derivative works of these forms that are substantially similar to the Registered NCIS Works. Occidental and Crop1 included copies of these derivative works with their state filings, as alleged more particularly in paragraphs 31 - 63. The NCIS copyright notice and form number were removed from these Registered NCIS Works. The name "Occidental Fire & Casualty Company of North Carolina" appears on each of these unauthorized derivative works, and a copyright notice identifying Occidental as the copyright owner appears on several of these unauthorized derivative works. Upon information and belief, Crop1 obtained access to the Registered NCIS Works either through public filings made by NCIS with state regulatory and statutory authorities or by downloading such materials from a restricted access portion of NCIS's website when Crop1 was affiliated with Converium. The Registered NCIS Works copied in the foregoing fashion include:

Registration No.   Title

TX 6-179-218   General Provisions (2002-NCIS 3)

TX 6-179-381   Crop-Hail Insurance Policy (2002-NCIS 5)

TX 6-179-383   Crop-Hail Policy – Basic Form Special Provisions Minnesota,
         North Dakota, and South Dakota (2002-NCIS 622)

TX 6-179-384   Crop-Hail Policy – Basic Form Special Provisions Minnesota,
         North Dakota, and South Dakota (2005-NCIS 622)

| | |
|---|---|
| TX 6-179-378 | Endorsement to NCIS Crop-Hail Insurance Policy Companion Plan Hail Insurance Minnesota (2002-NCIS 653 MN) |
| TX 6-179-380 | Minnesota Amendatory Endorsement (2003-NCIS 3 MN) |

30.     With respect to the Registered NCIS Works listed below, Occidental and Crop1 copied the Registered NCIS Works and prepared derivative works based upon the Final Average Loss Cost (FALC) Analysis therein in the form of rate pages.  Occidental and Crop1 included copies of these derivative rate pages with their state filings, as alleged more particularly in paragraphs 31 - 63.  Upon information and belief, Crop1 obtained access to the Registered NCIS Works either through public filings made by NCIS with state regulatory and supervisory authorities or by downloading such materials from a restricted access portion of NCIS's website when Crop1 was affiliated with Converium.  The FALCs so utilized include:

| Registration No. | Title |
|---|---|
| TX 6-179-225 | Iowa 2002 Final Average Loss Cost Analysis |
| TX 6-179-224 | Iowa 2004 Final Average Loss Cost Analysis |
| TX 6-179-227 | Nebraska 2002 Final Average Loss Cost Analysis |
| TX 6-179-226 | Nebraska 2004 Final Average Loss Cost Analysis |
| TX 6-179-386 | Minnesota 2002 Final Average Loss Cost Analysis |
| TX 6-179-387 | Minnesota 2004 Final Average Loss Cost Analysis |

31.     On or about March 1, 2005, Occidental/Crop1 made a crop-hail coverage filing with the Nebraska Department of Insurance, Property & Casualty Division (the "Nebraska filing"), either by U.S. Mail or by electronic mail, which that department received on March 3, 2005, and approved on March 31, 2005.    Cory Bremer as a "filing analyst" made this filing, giving an e-mail address at Crop1 ("cory.bremer@crop1insurance.com") and a mailing address

at 11631 Polk Street, Omaha, Nebraska 68137.  NCIS believes, and therefore alleges, that Mr. Bremer's mailing address is his residence and not an office of either Occidental or Crop1.

32.    The Nebraska filing by Occidental/Crop1 made the following affirmative misrepresentations:

        a.    That NCIS was their advisory organization; and

        b.    That NCIS was their statistical agent.

33.    The Nebraska filing by Occidental/Crop1 also improperly copied, filed, and relied upon the following NCIS forms, each of which NCIS has copyrighted and registered, previously approved by that state's Department of Insurance for use by members of NCIS:

| | | | |
|---|---|---|---|
| a. | 2002-NCIS | 3 | General Provisions (TX 6-179-218) |
| b. | 2002-NCIS | 5 | Policy Jacket (TX 6-179-381) |
| c. | 2005-NCIS | 626 | Basic Form – Special Provisions – Nebraska (TX 6-179-220 and TX 6-179-379) |
| d. | 1999-NCIS | 652 | Application for Companion Hail Insurance Coverage and Declaration Page (TX 6-179-223) |
| e. | 2002-NCIS | 653 | Optional Endorsement – Companion Plan Hail Insurance (TX 6-179-223) |

34.    The Nebraska filing by Occidental/Crop1 also copied portions of and relied improperly upon the NCIS copyrighted FALC filings (TX 6-179-227 and TX 6-179-226) with that state's Department of Insurance, stating:  "Rates are calculated based on NCIS approved Final Average Loss Costs ("FALC's)."

35.    On or about March 17, 2005, Occidental/Crop1 made a crop-hail coverage filing with the Iowa Insurance Division (the "Iowa filing"), either by U.S. Mail or by electronic mail, which NCIS believes that division approved on or about May 10, 2005.  Mr. Bremer made the Iowa filing using the same contact information that was in the Nebraska filing.

36.    The Iowa filing by Occidental/Crop1 affirmatively misrepresented that NCIS was their advisory organization, and that they were entitled to use NCIS forms and FALCs.

37.    The Iowa filing by Occidental/Crop1 also improperly copied, filed, and relied upon the following NCIS forms, each of which NCIS has copyrighted and registered, previously approved by that state's Insurance Division for use by members of NCIS:

| | | | |
|---|---|---|---|
| a. | 2002-NCIS | 3 | General Provisions (TX 6-179-218) |
| b. | 2002-NCIS | 5 | Policy Jacket (TX 6-179-381) |
| c. | 2005-NCIS | 614 | Basic Form – Special Provisions – Iowa (TX 6-179-219 and TX 6-179-385) |
| d. | 1999-NCIS | 652 | Application for Companion Hail Insurance Coverage and Declaration Page (TX 6-179-222) |
| e. | 2002-NCIS | 653 | Optional Endorsement – Companion Plan Hail Insurance TX 6-179-223) |
| f. | 2000-NCIS | 757 | Assignment of Indemnity (TX 6-179-382) |

38.    The Iowa filing by Occidental/Crop1 also submitted substantially identical copies of 2002-NCIS 3 and 2002-NCIS 5 (copyrighted and registered, respectively, as TX 6-179-218 and TX 6-179-381) as their forms, falsely representing that they were forms copyrighted or copyrightable by Occidental.

39.    The Iowa filing by Occidental/Crop1 also copied portions of and relied improperly upon the NCIS copyrighted FALC filings (TX 6-179-225 and TX 6-179-224) with that state's Insurance Division, stating:  "Rates are calculated based on NCIS approved Final Average Loss Costs ('FALC's')."

40.    On or about February 1, 2005, Occidental/Crop1 made a crop-hail coverage filing with the Minnesota Department of Commerce (the "Minnesota filing"), either by U.S. Mail or by electronic mail, which NCIS believes that department subsequently approved or treated as an

effective filing not requiring prior approval.  Mr. Bremer made the Minnesota filing with the same contact information that was in the Nebraska and Iowa filings.

41.     The Minnesota filing by Occidental/Crop1 affirmatively misrepresented that NCIS was their "rate service organization" and that they were entitled to use NCIS forms and FALCs.

42.     The Minnesota filing by Occidental/Crop1 also improperly copied, filed, and relied upon the following NCIS forms, each of which NCIS has copyrighted and registered, previously approved or accepted by that state's Department of Commerce for use by NCIS members:

| | | | |
|---|---|---|---|
| a. | 2002-NCIS | 3 | General Provisions (TX 6-179-218) |
| b. | 2003-NCIS | 3MN | Minnesota Amendatory Endorsement (TX 6-179-380) |
| c. | 2002-NCIS | 5 | Policy Jacket (TX 6-179-381) |
| d. | 2005-NCIS | 622 | Crop Hail Policy - Basic Form – Special Provisions (TX 6-179-383 and TX 6-179-384) |
| e. | 2003-NCIS | 652MN | Application for Companion Hail Insurance Coverage and Declaration Page (TX 6-179-222 and TX 6-179-377) |
| f. | 2003-NCIS | 653MN | Endorsement: Companion Plan Hail Insurance (TX 6-179-378) |

43.     The Minnesota filing by Occidental/Crop1 also submitted substantially identical copies of 2002-NCIS 3, 2003-NCIS 3MN, 2005-NCIS 622, 2003-NCIS 653MN, and 2002-NCIS 5 (copyrighted and registered under the registration numbers set forth in paragraph 12) as their forms, falsely representing that they were forms copyrighted or copyrightable by Occidental.

44.     The Minnesota filing by Occidental/Crop1 also copied portions of and relied improperly upon the NCIS copyrighted FALC filings (TX 6-179-386 and TX 6-179-387) with that state's Department of Commerce, stating:

        a.     "We have used the NCIS FALC with NO deviations."

        b.     "We have used the NCIS crop and policy form factors."

(Emphasis in original.)

45.     On or about May 19, 2005, Occidental/Crop1 made a crop-hail coverage filing with the Indiana Department of Insurance (the "Indiana filing"), either by U.S. Mail or by electronic mail.  Mr. Bremer made the Indiana filing with the same contact information that was in the Nebraska filing.

46.     The Indiana filing by Occidental/Crop1 affirmatively misrepresented that NCIS was their "Advisory Organization" and that they were entitled to calculate crop-hail rates based on NCIS FALCs.

47.     The Indiana filing by Occidental/Crop1 improperly copied, filed, and relied upon the following NCIS forms previously approved or accepted by the state's Department of Insurance:

        a.     2002-NCIS 3         General Provisions

        b.     2002-NCIS 5         Policy Jacket

        c.     2002-NCIS 3IN     Indiana Amendatory Endorsement

        d.     2005-NCIS 610     Crop-Hail Policy – Basic Form – Special Provisions

        e.     1999-NCIS 652     Application for Companion Hail Coverage and Declaration Page

        f.     2002-NCIS 653     Optional Endorsement – Companion Plan Hail Insurance

        g.     2000-NCIS 757     Assignment of Indemnity

48.     The Indiana filing by Occidental/Crop1 also submitted substantially identical copies of 2002-NCIS 3, 2002-NCIS 5, 2000-NCIS 757, and 1999 – NCIS 652 as their forms, falsely representing that they were forms copyrighted or copyrightable by Occidental when, in fact, NCIS has copyrighted and registered these forms under the registration numbers provided in paragraph 12.

49.     The Indiana filing by Occidental/Crop1 also relied improperly on "NCIS approved Final Average Loss Costs (FALC's)."

50.     On or about April 11, 2005, Occidental/Crop1 made a crop-hail coverage filing with the Michigan Office of Financial & Insurance Services (the "Michigan filing"), either by U.S.Mail or electronic mail, which NCIS believes that office either accepted or approved on or about April 14, 2005.  Mr. Bremer made the Michigan filing with the same contact information that was in the Nebraska filing (except for a change in his phone number).

51.     The Michigan filing by Occidental/Crop1 affirmatively misrepresented that NCIS was their "Reference Organization" and that they were entitled to calculate crop-hail rates based on NCIS FALCs.

52.     The Michigan filing by Occidental/Crop1 improperly copied, filed, and relied upon the following NCIS forms previously approved or accepted by that state's Office of Financial & Insurance Services:

|     |              |                                                                 |
|-----|--------------|-----------------------------------------------------------------|
| a.  | 2002-NCIS 3  | General Provisions                                              |
| b.  | 2002-NCIS 5  | Policy Jacket                                                   |
| c.  | 2005-NCIS 634| Basic Forms – Special Provisions – Michigan, Ohio and Wisconsin |
| d.  | 1999-NCIS 655| Application for Crop-Hail Insurance and Declaration Page        |

e.           2000-NCIS 757                 Assignment of Indemnity

This portion of the Michigan filing also misrepresented that these forms had been "submitted on our behalf by" NCIS.

53.    The Michigan filing by Occidental/Crop1 also submitted substantially identical copies of 2002-NCIS 3, 2002-NCIS 5, 1999-NCIS 655, and 2005-NCIS 655 as their forms, falsely representing that they were forms copyrighted or copyrightable by Occidental when, in fact, NCIS has copyrighted and registered these forms under the registration numbers provided in paragraph 12.

54.    The Michigan filing by Occidental/Crop1 also relied improperly on "NCIS approved Final Average Loss Costs (FALC's)."

55.    On or about April 20 and May 3, 2005, Occidental/Crop1 made crop-hail coverage filings with the Texas Department of Insurance (the "Texas filing"), either by U.S. Mail or by electronic mail.  Mr. Bremer made the Texas filing with the same contact information that was in the Nebraska filing.

56.    The April 20, 2005, portion of the Texas filing by Occidental/Crop1 affirmatively misrepresented that NCIS was their "Policy Forms/Endorsements: Insurance Company/Advisory Organization" for purposes of form filing and approval.

57.    The May 3, 2005, portion of the Texas filing by Occidental/Crop1 affirmatively misrepresented that NCIS was their "Rates: Insurance Company/Advisory Organization" for purposes of rate filing and approval.

58.    The Texas filing by Occidental/Crop1 also submitted, among other forms, copies of 1999-NCIS 652, 2002-NCIS 3, and 2002-NCIS 5 as their forms, falsely representing that they

were forms copyrighted or copyrightable by Occidental when, in fact, NCIS has copyrighted and registered these forms under the registration numbers provided in paragraph 12.

59.    The Texas filing by Occidental/Crop1 also relied improperly on NCIS FALCs for the State of Texas.

60.    On or about May 5, 2005, Occidental/Crop1 made a crop-hail coverage filing with the Wisconsin Office of the Commissioner of Insurance, Bureau of Market Regulation (the "Wisconsin filing"), either by U.S. Mail or by electronic mail, which NCIS believes was deemed approved by the Commissioner on or about June 4, 2005. Mr. Bremer made the Wisconsin filing, but used Crop1's address in Des Moines, Iowa, as well as his own Crop1 e-mail address in providing contact information.

61.    The Wisconsin filing by Occidental/Crop1 improperly filed or relied upon the following NCIS forms previously approved or accepted by the state's Commissioner of Insurance:

| | | |
|---|---|---|
| a. | 2002-NCIS 3 | General Provisions |
| b. | 2003-NCIS 3WI | Wisconsin Amendatory Endorsement |
| c. | 2002-NCIS 5 | Policy Jacket |
| d. | 2005-NCIS 634 | Crop-Hail Policy – Basic Form – Special Provisions |
| e. | 1999-NCIS 652 | Application for Companion Hail Plan |
| f. | 2002-NCIS 653 | Endorsement: Companion Plan Hail Insurance |
| g. | 2000-NCIS 757 | Assignment of Indemnity |

62.    The Wisconsin filing by Occidental/Crop1 also submitted substantially identical copies of the NCIS forms listed in paragraph 61 as their forms, falsely representing in certain instances that they were forms copyrighted or copyrightable by Occidental when, in fact, NCIS has copyrighted and registered these forms under the registration numbers provided in paragraph 12.

63.    The Nebraska, Iowa, Minnesota, Indiana, Michigan, Texas, and Wisconsin filings illustrate wholesale infringement by Occidental and Crop1 of valid copyrights owned by NCIS, especially Registered NCIS Works such as TX 6-179-218, TX 6-179-381, TX 6-179-222, TX 6-179-223, and TX 6-179-382.

64.    The Nebraska, Iowa, Minnesota, Indiana, Michigan, Texas, and Wisconsin filings further illustrate wholesale misappropriation and conversion by Occidental and Crop1 of trade secrets and other proprietary materials owned by NCIS.

65.    NCIS believes that Occidental/Crop1 also made crop-hail coverage filings in the State of Illinois and Washington (in addition to those made by them, as alleged above).

66.    Based on a review of Crop1's website (www.crop1insurance.com) and the contents of the Nebraska, Iowa, Minnesota, Indiana, Michigan, Texas, and Wisconsin filings, NCIS believes, and therefore alleges, that Occidental and Crop1 have made either identical or substantially equivalent representations and misrepresentations to state insurance regulatory and supervisory authorities in Illinois and Washington.

67.    NCIS discovered the existence of the Nebraska filing on or about June 29, 2005, and its contents on July 8, 2005.  NCIS discovered the existence and contents of the Iowa and Minnesota filings on July 11, 2005, and of the other above referenced filings shortly thereafter.

68.    Mr. Bremer sought state regulatory/supervisory filing information from NCIS on April 5 and 14, 2005. On April 5, Mr. Bremer stated that he was making crop hail filings for Occidental in Illinois, Indiana, Michigan, Minnesota, Texas, and Washington, but specifically stated: "We are affiliated with CropUSA's NCIS membership." Since Mr. Bremer made the Occidental/Crop1 filings in Nebraska, Iowa, and Minnesota in February and March 2005, hindsight suggests the likely falsity of this statement, and that he improperly sought information available to a member of NCIS for use by a non-member. Because CropUSA is a member in good standing of NCIS, and because CropUSA, after submitting its original membership application to NCIS, disclosed on or about January 21, 2005, that it was the managing general agent for Occidental's crop-hail business, the limited information sought by Mr. Bremer (filing numbers individually assigned by the states or by NCIS he mentioned) was provided by NCIS. After discovering, however, that Mr. Bremer made the Nebraska filing for Occidental using a Crop1 e-mail address, NCIS checked with CropUSA and was told that it is not writing any crop-hail coverage for Occidental, although it previously had intended to do so. Further, after discovering the foregoing, NCIS logged on to CropUSA's website on July 14, 2005 (www.cropusainsurance.com) and found no references to any relationships between it and Occidental or, in fact, to CropUSA's offering of crop-hail coverage of any kind in any location. Mr. Bremer's likely deceit is further revealed (with the benefit of the prior Nebraska, Iowa, and Minnesota filings in hand) by his use of a Crop1 e-mail address in those filings and his use of "cbremer@omahanh.com" in his electronic communications with NCIS.

69.    In view of the foregoing, it now is obvious that Occidental and Crop1 have been deceiving state insurance regulatory and supervisory authorities in their filings and that they also have embarked on a course of deceiving NCIS.

## CLAIMS FOR RELIEF

### Count I

### (Violations of 17 U.S.C. § 101 *et seq*)

70.    NCIS realleges and incorporates here in paragraphs 1 through 69.

71.    Section 106 of the Copyright Act of 1976, 17 U.S.C. § 106, grants a copyright owner the exclusive right, among other things:  (a) to reproduce the copyrighted work; (b) to distribute copies of the copyrighted work to the public; (c) to display copies of the copyrighted work to the public; and (d) to prepare derivative works of the copyrighted work.

72.    Occidental and Crop1 have and will continue to copy, display, distribute, and prepare derivative works of the Registered NCIS Works.

73.    Occidental and Crop1's actions as described above violate one or more of the exclusive rights granted under Section 106 of the Copyright Act.  Occidental and Crop1's actions have been undertaken without the permission or authorization of NCIS, as the owner of the copyrights infringed, in derogation of the rights of NCIS, and to the detriment of NCIS and its members whose membership payments have funded the development of the Registered NCIS Works and similar materials.

74.    NCIS has been damaged by Defendant Crop1's conduct.

75.    Occidental's and Crop1's infringements will cause further irreparable injury to NCIS if Occidental and Crop1 are not restrained by the Court from further violation of NCIS's rights.

76.    NCIS has no adequate remedy at law for such continuing violations.

77.    Occidental's and Crop1's infringements as described above were and are intentional, deliberate, willful, and in bad faith.

## Count II
### (Violation of 15 U.S.C. § 1125)

78.    NCIS realleges and incorporates herein paragraphs 1-69.

79.    Occidental and Crop1 have violated 15 U.S.C. § 1125 in that they have made false or misleading descriptions of fact and false or misleading representations of facts that are likely to cause confusion as to the origin, sponsorship, or approval of their services and commercial activities, or misrepresent the nature, qualities, or characteristics of their services and commercial activities.

80.    By reason of the foregoing, Occidental and Crop1 are liable to NCIS for damages and subject to appropriate injunctive and/or declaratory remedies.

## Count III
### (Appropriation of Trade Secrets)

81.    NCIS realleges and incorporates herein paragraphs 1- 69.

82.    The property, forms, procedures, statistical information and processes of NCIS identified in this complaint constitute trade secrets.

83.    Occidental and Crop1 have acquired the trade secrets of NCIS through improper means.

84.    Occidental and Crop1 have used the trade secrets of NCIS without NCIS's consent, and Occidental and Crop1 knew or had reason to know that the trade secrets had been acquired by improper means.

85.    As a direct and proximate result of the foregoing, Occidental and Crop1 are liable to NCIS for damages and are subject to appropriate injunctive and/or declaratory remedies.

## Count IV
### (Conversion)

86.    NCIS realleges and incorporates herein paragraphs 1- 69.

87.    Occidental and Crop1 have intentionally taken and used the property of NCIS, to wit, its forms, filings, and statistical information, without permission or justification.

88.    As a direct and proximate result of the foregoing, Occidental and Crop1 are liable to NCIS for damages and are subject to appropriate injunctive and/or declaratory relief.

### Count V
### (Common Law Fraud)

89.    NCIS realleges and incorporates herein paragraphs 1- 69.

90.    As demonstrated herein, Occidental and Crop1 made false representations of material facts to both NCIS and various state insurance regulatory offices.

91.    The false representations made by Occidental and Crop1 were known to be false when made and were made with the intent that the false representation be acted and relied upon.

92.    As a result of the false representations made by Occidental and Crop1, actions were taken by NCIS and certain state insurance regulatory agencies, which actions would not have been taken without those false representations.

93.    As a direct and proximate result of Occidental and Crop1's false representations, NCIS has suffered substantial damages and is entitled to appropriate injunctive and/or declaratory remedies.

### PRAYER FOR RELIEF

Wherefore, NCIS respectfully requests:

a.    As to Count I, that the Court enter judgment against Occidental and Crop1 jointly and severally finding that the defendants infringed NCIS's copyrights in the Registered NCIS Works, and ordering that all profits, gains, and advantages obtained by the defendants from their infringements and that all damages sustained by NCIS on account of the defendants'

unlawful acts, or alternatively statutory damages as provided under 17 U.S.C § 504(c), be awarded to NCIS, and, because of the willful and malicious nature of the unlawful acts, that the Court enter judgment against Occidental and Crop1 jointly and severally for increased damages and punitive damages, along with the costs of this action and NCIS's reasonable attorneys' fees.

b. Also as to Count I, that the Court issue an injunction against Occidental and Crop1 (i) restraining and enjoining each defendant and their officers, directors, employees, affiliates, principals, agents, servants, successors and assigns, loss adjusters, and contractors, and all those in active concert or participating with them ("Enjoined Parties") from copying, reproducing, modifying, preparing derivative works of, displaying, distributing, offering for sale and/or selling any of the Registered NCIS Works and any other copyrighted works of NCIS in the future, (ii) ordering the Enjoined Parties to return to NCIS any and all originals, copies, facsimiles, or duplicates of the infringing works as authorized by 17 U.S.C. § 503, (iii) ordering the Enjoined Parties to withdraw all infringing materials from use in offering, selling, and servicing MPCI coverage and crop-hail coverage (including, without limitation, removing infringing materials from all websites, training materials, and operational manuals and materials of any sort), and (iv) ordering the Enjoined Parties to withdraw all infringing materials from their state filings for crop-hail coverage and not to assert any copyrightable interests of their own therein;

c.    As to Count II, that the Court issue an injunction against Occidental and Crop1 prohibiting each defendant and their officers, directors, principals, agents, servants, employees, successor and assigns, and all those in active concert or participating with them, from using any form, filing, or statistical information of NCIS and, because of the willful and malicious nature of the unauthorized use, that the Court enter judgment against Occidental and Crop1 jointly and severally for actual and punitive damages, in an amount to be proven at trial, along with NCIS's attorneys' fees and costs of this action.

d.    As to Count III, that the Court enjoin the appropriation of NCIS's trade secrets and prohibit any further disclosure or use, and, in addition to an injunction, that the Court enter judgment against Occidental and Crop1 jointly and severally for actual damages, caused by the appropriation, in an amount to be proven at trial and because the appropriation is willful and malicious, that the Court enter judgment for exemplary or punitive damages against Occidental and Crop1 and award NCIS its attorneys' fees and costs of this action.

e.    As to Counts IV and V, that the Court enter judgment against Occidental and Crop1 jointly and severally for actual damages, in an amount to be proven at trial, but in no event less than the profit realized by or the unjust enrichment of Occidental and Crop1 as a result of their unauthorized and fraudulent use of NCIS's proprietary property.  In addition to actual damages, in light of the intentional misconduct of Occidental and Crop1,

that the Court enter a judgment awarding punitive or exemplary damages against Occidental and Crop1, and award NCIS its attorneys' fees and costs incurred in this action.

     f.    For such other and further relief as the Court shall find is just and reasonable.

Dated:  August 11, 2005

/s/ Michael E. Tucci
MICHAEL TUCCI (# 430470)
Stinson Morrison Hecker LLP
1150 - 18th Street, N.W., Suite 800
Washington, D.C.  20036
Tel: (202) 785-9100; Fax: (202) 785-9163

AND

/s/ P. John Owen by Michael E. Tucci
P. JOHN OWEN
National Crop Insurance Services, Inc.
8900 Indian Creek Parkway, Suite 600
Overland Park, KS  66210
Tel: (913) 685-2767; Fax: (913) 685-3080

AND

/s/ Bruce E. Baty by Michael E. Tucci
BRUCE E. BATY
PENNY R. SLICER
Stinson Morrison Hecker LLP
1201 Walnut, Suite 2800
Kansas City, MO 64106-2150
Tel: (816) 842-8600; Fax: (816) 691-3495

*Attorneys for Plaintiff National Crop Insurance Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing First Amended Complaint for Damages and for Injunctive and Declaratory Relief was sent via Federal Express overnight delivery this 11th day of August, 2005  to the following:

Occidental Fire & Casualty Company of North Carolina
c/o Registered Agent
CT Corporation Systems
1015 15th Street, N.W., Suite 1000
Washington, D.C. 20005

Crop1 Insurance Direct, Inc.
d/b/a Crop1 Insurance, Inc.
4532 114th Street
Des Moines, IA 50322

/s/ Michael E. Tucci
Michael E. Tucci