IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL CROP INSURANCE                    )
SERVICES, INC.,                            )
                                           )
Plaintiff,                                 )
                                           )    Civil Action
Vs.                                        )
                                           )    No. 1:05-cv-o1417-RWR
OCCIDENTAL FIRE & CASUALTY                 )
COMPANY OF NORTH CAROLINA,                 )
et al.,                                    )
                                           )
Defendants.                                )

## SUPPLEMENTAL DECLARATION OF SHANE WEAVER

I, Shane Weaver, declare, under penalty of perjury and in accordance with 28 U.S.C. § 1746, that the following factual statements are true and correct.

1.  This declaration supplements my declaration of August 10, 2005, in this matter. It is given in response to the arguments of Crop1 Insurance Direct, Inc. ("Crop1") and Occidental Fire & Casualty Company of North Carolina ("Occidental") that the pending Motion for Preliminary Injunction should be denied.

2.  I am employed by National Crop Insurance Services, Inc. ("NCIS"} as a Crop Insurance Specialist. As such, I principally work on the federal government's program providing multiple peril crop insurance coverage ("MPCI coverage") through private insurance companies. This includes monitoring changes in that program, checking such changes for consistency with insurance forms and procedures for use in conjunction with that program (some of which have been developed by NCIS or modified by it, and others of which have been developed by the federal government's Risk Management Agency ("RMA")), and determining whether existing forms and procedures need to be modified or new ones created. In the process of doing this

work, I have become familiar with forms and procedures copyrighted by NCIS for use in connection with MPCI coverage as well as those used in connection with traditional crop-hail coverage.

3.       NCIS develops and prepares forms for use by members with respect to their MPCI coverage business.  When NCIS develops such forms, it seeks to utilize its decades of expertise in crop insurance and bring it to bear in creating a new document that complies with members' obligations under the USDA's Federal Crop Insurance Program and meets the tests of acceptability established periodically by the Risk Management Agency in its Document and Supplemental Standards Handbook ("DSSH").

4.       I have reviewed the Affidavit of William T. Rose, Jr. in this matter.

5.       Paragraph 21 of Mr. Rose's Affidavit refers to certain sections of the DSSH, but the pages on which those sections appear were not included within the Exhibit 2 to Mr. Rose's Affidavit.  A copy of the cover page, table of contents and first 9 pages of the DSSH are attached hereto as Exhibit 1.

6.       The DSSH provides document standards and submission requirements for certain forms and other documents to be used in conjunction with MPCI insurance coverage.  The DSSH sets forth substantive statements and information which must be included within those documents.  The forms of the documents themselves are not provided in the DSSH.  Instead, the documents are to be developed by persons, insurance providers or trade associations, and any such documents requiring the insured's signature, must be submitted for approval by RMA.  Exhibit 1 at § 4(I)-(L), p. 3.  The entire text, arrangement of text, overall appearance and format of the documents are not mandated by the RMA.  All that is required is compliance with the standards and requirements set forth in the DSSH or other applicable guidelines.  The DSSH

specifically states that the item entries may be formatted in any manner deemed appropriate (Exhibit 1, §4(C), p. 3) and that multiple documents may be combined into one document, as long as the applicable standards for each document are met. (Exhibit 1, §4(H), p. 3).

7.     When NCIS completes the process of developing a form, it makes the form available for use by members. There are multiple examples, however, of members of NCIS who have developed their own federal crop insurance forms as substitutes for those developed by NCIS.

8.     Examples of members' forms differing from NCIS forms are production worksheets designed for use in adjusting claims of MPCI policyholders. Although NCIS has a variety of production worksheet forms which it has developed, all of which meet the standards of the federal government, many NCIS member companies have either modified NCIS form production worksheets and customized them for their own use, or they have created from scratch their own forms of production worksheet. At this point in time I am confident that numerous members of NCIS have either adapted or developed from scratch their forms of production worksheets.

9.     Another example of member companies who utilize their own distinct versions of forms for implementing the Federal Crop Insurance Program is the Power of Attorney form developed by NAU Country Insurance Company ("NAU") when it was a member of NCIS in 2003. The NCIS version of this form was attached as Exhibit 6B to the Declaration of James M. Crist, previously submitted in this matter. A copy of the NAU version is attached hereto as Exhibit 2. Both NCIS and NAU versions of the Power of Attorney meet the standards of the DSSH, but each differs from the other. The following differences are apparent from a comparison of the two versions:

a.   The text of the NCIS and NAU forms is formatted and arranged differently.

b.   The NAU form provides space for multiple data entries for which there is no substantial equivalent in the NCIS form (basically, the top one-third of the NAU form).

c.   NAU has added terminology not included in the NCIS form (for example, adding "and/or contract" in two places.

d.   NAU expresses the notarization instructions using text that differs from the equivalent portion of the NCIS form.

e.   The NAU form does not include passages that appear in the NCIS form (for example, omitting "I hereby accept the foregoing appointment" from the signature area for the appointee).

10.   The foregoing analysis shows that two versions of the same type of document can comply with the DSSH, yet be written, arranged, and structured differently.

11.   Paragraph 25 of the Rose Affidavit states that NCIS's version of the LAM Manual is a copy of the FCIC LAM Manual, and that NCIS is claiming copyright in that version. NCIS's version of the manual does include some additional or revised text from the FCIC LAM Manual. Specifically, the NCIS cover page has been included, NCIS formatting and footers have been included, and some NCIS forms have been included. NCIS has not applied for copyright registration of its version of the LAM Manual, and has not asserted a claim of infringement of the LAM Manual against Crop1 or Occidental.

12.   Paragraph 25 of the Rose Affidavit indicates that the FCIC LAM Manual suggest that insurers utilize the NCIS Withdrawal of Claim form. While the FCIC LAM Manual does

indicate that NCIS's Withdrawal of Claim form may be used, it also specifically indicates that other FCIC-approved Withdrawal of Claim forms may also be used. Specifically, the language reads "if directed by the insurance provider, complete and have the insured sign a 'Withdrawal of Claim,' NCIS-M920 or other FCIC-approved 'Withdrawal of Claim' form rather than prepare a 'No Indemnity Due.'" Exhibit 3A to Rose Affidavit, p. 125. Other parties use different Withdrawal of Claim forms. For example, NAU has a different Withdrawal of Claim that it uses with its MPCI Notice of Loss form. A copy of this form is attached hereto as Exhibit 3. The specific wording and arrangement of text is different from NCIS's Withdrawal of Claim form.

13.    The Simplified Claims Process Qualification and Notice of Loss form was developed by NCIS and submitted for approval by the FCIC. This form was designed to be used as written verification of an insured's notice of loss and is a questionnaire to aid in the determination of insureds who may qualify for the Simplified Claims Processing ("SCP") pilot program administered by RMA.

14.    Paragraph 28 of the Rose Affidavit indicates that the Simplified Claims Qualification and Notice of Loss form developed by NCIS includes data and requests information required by RMA written guidelines. While the RMA written guidelines do explain the qualification criteria for the simplified claims program ("SCP"), it does not provide a specific form or specific language to be included in any forms for implementation of the program.

15.    Attached as Exhibit 4 is a bulletin that NCIS provides to its members relating to the use of the Simplified Claims Processing Qualification and Notice of Loss form. This bulletin states "this form is available to NCIS member companies as an optional method of implementing

the SCP. Reinsured companies may submit their own SCP forms and procedures to RMA for approval."

16.    Paragraph 29 of the Rose Affidavit indicates that the NCIS Power of Attorney form is virtually identical to the specific form required by the RMA, in accordance with the requirements set forth in the DSSH. The DSSH does not provide a specific form for the Power of Attorney, but instead provides certain statements that should be included within the Power of Attorney form developed for use by insureds. It is noted that the DSSH specifically states "[I]f an insurance provider chooses to develop its own form for use by insureds, such forms should comply with the non-substantive standards listed below." See Exhibit 2 of Rose Affidavit, p. 50. As noted above, another insurer, NAU, has adopted a Power of Attorney form in compliance with the DSSH that is different from the NCIS Power of Attorney form. Exhibit 2 attached hereto.

17.    Paragraph 30 of the Rose Affidavit indicates that the NCIS High-Risk Claim Exclusion Option form is virtually identical to that required by the RMA, in accordance with the requirements set forth in the DSSH. The DSSH does not provide a specific form for the High-Risk Claim Exclusion Option form, but instead provides statements and information that should be included within the form.

Dated: August 29, 2005

Shane Weaver

**United States Department of Agriculture**

# USDA

**Risk Management Agency**

**Product Development Division**

**FCIC 24040**

# 2004

# Document and Supplemental Standards Handbook (DSSH)

**EXHIBIT 1**

## TABLE OF CONTENTS

| SECTIONS | | PAGE |
|---|---|---|
| 1 | PURPOSE | 1 |
| 2 | SUMMARY OF CHANGES | 1 |
| 3 | SPECIAL INSTRUCTIONS | 2 |
| 4 | OPERATING POLICY | 2 |
| 5 | ABBREVIATIONS | 4 |
| 6 | REPORTS (Reserved) | 4 |
| 7 | DOCUMENTS | 4 |
| 8 | DEFINITIONS | 5 |
| 9 | RESPONSIBILITIES | 6 |
| 10 | SUBMISSION REQUIREMENTS FOR DOCUMENTS | 7 |
| 11 | APPROVAL FOR DOCUMENTS | 8 |
| 12 | SUBMISSION REQUIREMENTS FOR NON-REINSURED SUPPLEMENTAL CROP INSURANCE POLICIES | 9 |
| 13 | REVIEW OF NON-REINSURED SUPPLEMENTAL (NRS) CROP INSURANCE POLICIES | 10 |

EXHIBITS

| 1 | APPLICATION FOR INSURANCE STATEMENT | 14 |
|---|---|---|
| 2 | CONDITIONS OF ACCEPTANCE STATEMENTS | 15 |
| 3 | REINSURANCE STATEMENT | 16 |
| 4 | FALSE CLAIM STATEMENT | 17 |
| 5 | ACREAGE REPORT CERTIFICATION STATEMENT | 18 |
| 6 | COLLECTION OF INFORMATION AND DATA (PRIVACY ACT) | 19 |
| 7 | NONDISCRIMINATION STATEMENT | 20 |
| 8 | APPLICATION FORM | 21 |
| 9 | APPLICATION/CANCELLATION AND TRANSFER FORM | 26 |
| 10 | APPLICATION/ACREAGE REPORT FORM | 31 |

i

## TABLE OF CONTENTS

| | | |
|---|---|---|
| 11 | ACREAGE REPORT FORM | 36 |
| 12 | POLICY CHANGE FORM | 39 |
| 13 | SOCIAL SECURITY NUMBER (SSN) AND EMPLOYER IDENTIFICATION NUMBER (EIN) REPORTING FORM | 45 |
| 14 | POLICY CONFIRMATION AND/OR SCHEDULE OF INSURANCE | 48 |
| 15 | POWER OF ATTORNEY | 50 |
| 16 | ASSIGNMENT OF INDEMNITY | 52 |
| 17 | CONTINUOUS HAIL AND FIRE EXCLUSION OPTION FORM | 55 |
| 18 | REQUEST TO EXCLUDE HAIL AND FIRE | 59 |
| 19 | TRANSFER RIGHT TO AN INDEMNITY | 63 |
| 20 | HIGH-RISK LAND EXCLUSION OPTION | 67 |
| 21 | PRODUCTION CERTIFICATION WORKSHEET | 70 |
| 22 | CROP INSURANCE WITHDRAWAL OF CLAIM | 74 |
| 23 | REQUEST FOR POLICY CANCELLATION AND TRANSFER OF EXPERIENCE DATA | 76 |

U.S. DEPARTMENT OF AGRICULTURE<br>
WASHINGTON, D.C. 20250

| RISK MANAGEMENT AGENCY DIRECTIVE | NUMBER: 24040 |
|---|---|

| SUBJECT: | DATE: |
|---|---|
| DOCUMENT AND SUPPLEMENTAL STANDARDS HANDBOOK (DSSH) | July 2003 |
| | OPI: Product Development Division |
| | APPROVED: |
| | Deputy Administrator, Research & Development |

## 1   PURPOSE

This directive provides submission requirements and document standards established by the Risk Management Agency (RMA) for the administration of the Federal crop insurance program and Non-Reinsured Supplemental (NRS) crop insurance policies, in accordance with the Standard Reinsurance Agreement (SRA) and the Federal Crop Insurance Act.

## 2.   Summary of Changes

Standards added for "Crop Insurance Withdrawal of Claim" form.

Standards added for "Request For Policy Cancellation and Transfer of Experience Data" form.

Standards removed for "Request for Actuarial Change." See CIH.

Section 12, "Submission Requirements for Non-Reinsured Supplemental Crop Insurance Policies," added.

Section 13, "Approval for Non-Reinsured Supplemental Crop Insurance Policies," added.

Exhibit 5, "Acreage Report Certification Statement," revised to clarify the statement.

Exhibit 7, "Nondiscrimination Statement," Corrected address.

Applications, Exhibits 8, 9, and 10. The major changes are: Added county option question, Yes/No question regarding the applicant insuring the landlord's or tenant's share, Spouse's name and Social Security Number is required and a method for agents to sign and print their name if they do not have agent code numbers.

1

Exhibit 9, "Application/Cancellation and Transfer Form", the cancellation section must be in a box and requires the applicant to check " Yes."

Several exhibits will now show the insured's address as non-substantive.

Exhibit 12, "Policy Change Form," the added county option question" has been updated and the spouse's name and Social Security Number are required.

Exhibit 13, "Social Security Number and Employer Identification Number Reporting Form." The spouse's name and Social Security Number are required.

Exhibit 15, "Power of Attorney" form, requirements have changed.  See General Information.

> **NOTE:  This is only a summary of the major changes.  It is advised that you review the entire handbook carefully.**

## 3    SPECIAL INSTRUCTIONS

A    This directive is effective on the date issued and will remain in effect until superseded or slip-sheeted.

B    RMA will amend this directive as needed to revise or issue new guidelines and to include additional MPCI documents requiring RMA approval.

C    Trade associations that service Insurance Providers will be considered the same as Insurance Providers for the purposes of this handbook.

D    The Submission Standards Handbook (FCIC 24030) is superseded by this directive.

E    The Document and Supplemental Standards Handbook (FCIC 24040) dated June 2003 replaces R&D Informational Memorandum: R&D-00-004.

F    The Documents Standards Handbook (FCIC 24040) issued July 1998 is superseded by this directive.

## 4    OPERATING POLICY

A    Documents, described in this handbook, are required to contain all items identified as "Substantive."  (See the exhibits contained in this directive for the items specific to individual documents.)

B    Any documents containing an interest rate for late premium payment cannot be higher than the rates stated in the Code of Federal Regulations (7 CFR § 401.8(d)).

C    Item entries for forms may be formatted as line entries, column headings, boxes, or blocks, as appropriate.

D    The Privacy Act Statement must be printed on the document or provided to the applicant/insured each time a document is signed that collects information for the applicant/insured.

E    All documents must be identified by an alpha and/or numeric document identification number, which may or may not include a date. Documents will be tracked by this identification number. Even though typeset, E-Commerce and Computer generated forms may look the same each must be approved by RMA.

F    All documents must bear at the top of the form the Insurance Provider's full name and address that holds the SRA. The address is not required if provided with the policy or policy jacket to the insured.

G    RMA expects all documents to have the text printed with no less than an 8-point font size. This will assist the applicants/insureds in reading and understanding documents presented to them.

H    When combining multiple documents into one document, the combined document must meet the applicable standards in place for each individual document.

I    All documents (except as described in K) developed by an Insurance Provider or trade association must be submitted for approval if:

(1) the Insurance Provider or trade association is not specifically authorized by RMA or the Standard Reinsurance Agreement to develop and issue documents without submission to RMA,

(2) no standards exist for the documents,

(3) the documents are not otherwise approved by RMA (e.g., Board approval of 508(h) documents).

J    Provisions in Section 9 must be followed when submitting documents to FCIC for approval.

K    Administrative documents (not requiring the insured's signature) for internal operations do not have to be submitted for approval.

L    These standards apply to all submissions prepared by persons, Insurance Provider and/or trade associations. Trade associations may submit and receive approval of submissions on behalf of their members. Submissions for RMA approval must comply with these standards.

3

M    For answers to any questions regarding submission, standards, or the approval process contact the Product Development Division at (816) 926-7387.

## 5    ABBREVIATIONS

APH    Actual Production History

CFR    Code of Federal Regulations

CIH    Crop Insurance Handbook

DSSH Document and Supplemental Standards Handbook

EIN    Employer Identification Number

FSA    Farm Service Agency

FSN    Farm Serial Number

MPCI Multiple Peril Crop Insurance

NRS    Non-Reinsured Supplemental

RMA    Risk Management Agency

SBI    Substantial Beneficial Interest

SRA    Standard Reinsurance Agreement

SSN    Social Security Number

USC    United States Code

USDA United States Department of Agriculture

## 6    REPORTS  (Reserved)

## 7    DOCUMENTS

A    This directive contains standards for the following MPCI documents.

(1)    Application

(2)    Application/Cancellation and Transfer

(3)    Application/Acreage Report

(4)    Acreage Report

4

    (5)     Policy Change

    (6)     Social Security Number (SSN) and Employer Identification Number (EIN) Reporting Form

    (7)     Policy Confirmation and/or Schedule of Insurance

    (8)     APH Production and Yield Report

    (9)     Power of Attorney

    (10)    Assignment of Indemnity

    (11)    Continuous Hail and Fire Exclusion Option Form

    (12)    Request to Exclude Hail and Fire

    (13)    Transfer of Right to an Indemnity

    (14)    High Risk Land Exclusion Option

    (15)    Production Certification Worksheet

    (16)    Crop Insurance Withdrawal of Claim

    (17)    Request For Policy Cancellation and Transfer of Experience Data

B    Forms not contained in the DSSH are found in the Loss Adjustment Manual (LAM), Crop Loss Adjustment Standards Handbooks, Crop Insurance Handbook (CIH), Underwriting Guidelines, Adjusted Gross Revenue Standards Handbook and other applicable issuances approved by RMA.

C    Policies, Options and Endorsements as issued by RMA are the standards that Insurance Providers must meet.

## 8    DEFINITIONS

A    The Act - The Federal Crop Insurance Act, as amended.

B    Agent - An individual licensed by the State in which the agent does business under contract with an Insurance Provider, its managing general agent, or any other entity, to sell and service eligible crop insurance contracts.

C    Applicant - Any individual or legal entity applying for multiple peril crop insurance.

D    Approval - Authorization that the Insurance Provider may begin using the documents in its operation.

E    Authorized Representative - Any person authorized by the insured to conduct crop insurance business on the insured's behalf.

F    Disapproval – The document has been denied approval for use by the Insurance Provider.

G    Document - Policies, endorsements, forms, procedures, and other material used for the purpose of administering the MPCI crop insurance program which require approval in accordance with the Standard Reinsurance Agreement.

H    Insurance Provider - A company reinsured by RMA providing crop insurance coverage to producers participating in any Federal crop insurance program administered under the Federal Crop Insurance Reform Act of 1994.

I    Non-Substantive - A term used by RMA informing the Insurance Provider that the recommended change(s) to a document may be made at the Insurance Provider's discretion.

J    Substantive - A term used by RMA informing the Insurance Provider that the specified change(s) to a document must be made before approval will be effective.

## 9    RESPONSIBILITIES

A    RMA's Product Development Division will:

(1)    Establish minimum standards for documents and issue to all affected parties.

(2)    Review all document submissions and identify substantive changes (required for approval) which Insurance Providers must make prior to document approval by RMA and their use in program delivery.

(3)    Approve and disapprove documents, as applicable, by giving notification in writing.

(4)    Provide guidance and clarification as needed regarding document standards.

(5)    Maintain DSSH (update existing standards, develop new standards, incorporate recommended changes, etc).

   B     Insurance Providers will:

       (1)   Develop documents in accordance with existing RMA standards.

       (2)   Submit documents, document completion instructions, and applicable computation results of documents, as required, to RMA's Product Development Division for approval prior to issuing documents.

## 10    SUBMISSION REQUIREMENTS FOR DOCUMENTS

The Insurance Provider must submit for RMA's approval, as required, all documents incorporated by reference into the eligible crop insurance contracts reinsured under the SRA. Any such documents must not be used by the Insurance Provider until approved or otherwise authorized in writing by RMA.

   A     What to submit:

       (1)   Two full sets of any documents requiring approval. Include both the front and back when information is contained on the reverse side (e.g., Privacy Act Statement) of any document.

           (a)   A transmittal memorandum which lists the documents submitted and their intended use.

           (b)   All documents used to administer the RMA-approved policy provisions, standards, and procedures for the determination of premiums, liability, indemnities, eligibility for insurance, special endorsements, amendments, exclusion documents, coverage determination documents, etc.

           (c)   All instructions that will be utilized for documents completion. Indicate whether documents will be computer generated or will be typeset and printed for distribution. Include examples of blank and completed documents. Document completion instructions for documents involving multiple crops (such as acreage report form completion instructions) will not require the submission of completed examples for each crop. The Insurance Provider will be notified when any additional examples are required.

           (d)   Examples and any explanations of the calculation process for any document used to compute the premium, liability and/or indemnities. RMA approved rounding rules must be utilized.

       (2) Any documents previously approved that are revised by the Insurance Provider in **ANY** manner, or that RMA determines must be revised.

In addition to the requirements specified in (1), the Insurance Provider must submit an outline identifying the specific revision(s) made.

B   Do not submit:

Internal documents, administrative instructions and/or letters that do not affect the RMA approved policy provisions or procedures.

C   When to submit:

Submit all submissions to RMA at least 90 days prior to use.  For example, an application for insurance must be submitted at least 90 days prior to the beginning of formal training on its use in sales for the crop year.

Loss adjustment procedures, documents, instructions, etc., must be submitted at least 90 days prior to the earlier of (1) the earliest date insurance could attach (e.g., corn planting in February in southern states) or (2) the beginning of formal training on their use in loss adjustment.

D   Submit to:

(1)   Risk Management Agency
Research and Development
Attention: Product Development Division STOP 0812
6501 Beacon Drive
Kansas City, Missouri 64133-4676

(2)   Courtesy copy of the transmittal memo only to:

Risk Management Agency
Attention: Reinsurance Services Division
1400 Independence Avenue, SW
Washington, D.C. 20250

E   Quality of documents submitted

All documents must be edited, checked for spelling, be in final form and conform to any standards issued by RMA.  RMA WILL NOT SPECIFICALLY REVIEW DOCUMENTS FOR SPELLING, GRAMMAR, PUNCTUATION, FORMAT, ETC.  FAXED COPIES ARE GENERALLY NOT ACCEPTABLE FOR REVIEW PURPOSES.

**11   APPROVAL FOR DOCUMENTS**

The Product Development Division will review all documents requiring RMA

8

approval and will provide comments and/or changes in narrative form or in red ink on the actual submission. Comments and changes will be identified as substantive "S" and non-substantive "NS".

10 The Product Development Division will issue a letter of approval, disapproval or conditional approval. Disapproval of documents will be accompanied with an explanation of why the documents were not approved. The Insurance Provider will have the opportunity to make the applicable corrections and resubmit the document for approval. Conditional approvals will require substantive changes and the final version of the form to be resubmitted to RMA within thirty-five (35) days or the approval is voided. Courtesy copies of document review determinations will be provided to the Reinsurance Services Division and the Deputy Administrator for Compliance.

## 12    SUBMISSION REQUIREMENTS FOR NON-REINSURED SUPPLEMENTAL (NRS) CROP INSURANCE POLICIES

A    What to Submit:

   (1)    All Supplemental policies required under the SRA.

   (2)    Any policies previously approved that are changed in ANY manner.

   (3)    Three complete copies of the new or revised policy and related material.

B    When to Submit:

   Crop insurance policies not requesting RMA reinsurance must be submitted no later than 90 days prior to the first sales closing date.

C    Submit to:

   Risk Management Agency
   Deputy Administrator, Research and Development
   Attention: Product Development Division STOP 0812
   6501 Beacon Drive
   Kansas City, Missouri 64133-4676

D    Quality of Documents Submitted:

   All documents must be edited, checked for spelling, and be in final form. RMA will not specifically review documents for spelling, grammar, punctuation, format, etc.

**NAU**
NAU Country Insurance Company

NAU COUNTRY INSURANCE CO.
6701 HIGHWAY 10 NW
RAMSEY, MN 55303-4700

CHECK ONE:
☐ HOME OFFICE-RAMSEY, MN
☐ BRANCH OFFICE-FARGO, ND
☐ BRANCH OFFICE-WOODLAND, CA

MULTIPLE PERIL CROP INSURANCE POWER OF ATTORNEY
NAMED PERIL & CROP-HAIL

| | |
|---|---|
| NAME OF INSURED: | |
| | EFFECTIVE CROP YEAR: / POLICY NO.: |
| AUTHORIZED REPRESENTATIVE (IF ANY): | INSURANCE PROVIDER: NAU COUNTRY INSURANCE COMPANY 6701 HIGHWAY 10 NW RAMSEY, MN 55303 |
| STREET AND MAILING ADDRESS: | |
| CITY AND STATE: ZIP: | AGENCY CODE: |
| TELEPHONE # STATE COUNTY (IES) | AGENCY/AGENT NAME: |

The undersigned does hereby make, constitute and appoint

_____ (Name)

of _____ (Address, City, State, Zip code)

in the County of _____ and State of _____ the true and lawful attorney, for and in the name, place and stead of the undersigned in connection with Multiple Peril Crop Insurance Policy and/or Contract Number _____ with NAU Country Insurance Company.

The undersigned gives and grants unto said attorney full authority and power to do and perform actions as initialed below fully ratifying and confirming all that said attorney shall lawfully do or cause to be done by virtue hereof.

___ 1. Making application for insurance
___ 2. Making crop acreage reports
___ 3. Giving notice of damage or loss
___ 4. Making claim for indemnity
___ 5. Making contract change
___ 6. Making transfers and cancellations
___ 7. Providing program required production reports
___ 8. Taking all actions related to crop insurance for the above identified policy and/or contract number

This Power of Attorney shall be filed at the office where the official file folder is maintained and shall remain in full force and effect until written notice of its revocation has been received by the office maintaining the official file folder (such revocation shall be placed in the official file folder).

Power of Attorney for the following Insured Crops:

This Power of Attorney is signed and dated at _____ (City), _____ (State)

this _____ day of _____ (Month), _____ (Year)

**ACKNOWLEDGMENT**
**(For use by Notary Public)**

State of _____
County of _____

(Use acknowledgment form if required by the State where acknowledgment is taken)
NOTE: Signatures of the Insured and the appointee must be notarized when required by law.

| | |
|---|---|
| INSURED'S SIGNATURE: | DATE |
| APPOINTEE'S SIGNATURE: | DATE |
| PRINTED WITNESS NAME: | |
| WITNESS SIGNATURE: | DATE |

MPCI-POA (09-03)

**EXHIBIT 2**

**NAU** COMPANIES

NAU COUNTRY INSURANCE CO.
6701 HIGHWAY 10 NW
RAMSEY, MN 55303-4700

*KEEPING IT SIMPLE!*

PLEASE INDICATE YOUR BRANCH OFFICE
- [ ] AGFORCE INSURANCE SERVICES-FARGO, ND
- [ ] CCIS CALIFORNIA CROP INSURANCE SERVICES-WOODLAND, CA
- [ ] NAU COUNTRY INSURANCE CO.-RAMSEY, MN

**MPCI**
**NOTICE OF LOSS**

AGENCY _____

POLICY# _____

TOWN _____ STATE _____

INSURED _____

Insured's Signature _____ Date _____

| OFFICE USE ONLY |
|---|
| LOSS# _____ |
| Supervisor _____ |
| Adjuster _____ |

| CROP | UNIT | CAUSE OF LOSS | DATE OF LOSS | HARVEST DATE |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

| STATUS |
|---|
| WOC    DEFER    CLOSED |
| **DATE RECEIVED** |
|  |
| **Please complete** |

- [ ] LOSS  [ ] PROBABLE LOSS

**Immediate Inspection:**
- [ ] REPLANT   [ ] APPRAISAL
- [ ] Prevented Plant  [ ] OTHER_____

I carry additional insurance: MPCI ____ Crop-Hail ____ with _____

My [ ] landlord [ ] Tenant is _____

### Prevented Planting First Inspection

| COUNTY | | | | CROP | PLANTED ACRES | UNPLANTED ACRES | FINAL USE |
|---|---|---|---|---|---|---|---|
| UNIT | SEC | TWP | RGE |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

Yes No
- [ ] [ ] Does acreage constitute 20 <u>contiguous</u> acres or 20% of the unit?
- [ ] [ ] Are rotation requirements correct (sunflowers, dry beans, sugar beets, canola, safflower)?
- [ ] [ ] Has insured been informed that prevented planting cannot be changed after the acreage reporting date?
- [ ] [ ] Did the Cause of Loss occur after the sales closing date of the year the application for the crop is in effect?

I understand that any use other than what was has been listed above will jeopardize any or all prevented planting indemnity.

Insured _____ Date _____   Adjuster _____ Date _____

### MPCI WITHDRAWAL OF CLAIM

I acknowledge that the potential production or harvested production on all units of this policy meet or exceed the production guarantee. Consequently, I withdraw all claims against the Company.

I agree and understand that signing this withdrawal in no way changes the terms of the policy nor jeopardizes any other loss that may occur.

Insured _____ Date _____   Adjuster _____ Date _____

**EXHIBIT 3**

**NATIONAL CROP INSURANCE SERVICES, INC.**
7201 WEST 129th STREET, SUITE 200
OVERLAND PARK, KANSAS 66213

January 26, 1999

BULLETIN NO. 99021
MPCI LOSS ADJUSTMENT NO. 820

TO: CLAIMS MANAGERS

## SIMPLIFIED CLAIMS PROCESSING QUALIFICATION AND NOTICE OF LOSS FORM
## NCIS M-930 '99

The M-930 Simplified Claims Process Notice Of Loss Form has been approved by FCIC and is now available from NCIS. It is designed to be used as written verification of an insured's notice of loss and as a questionnaire to aide in the determination of insureds who may qualify for the Simplified Claims Processing (SCP) Pilot as described in MGR-98-030. Use is restricted to the crops and crop years identified in MGR-98-030. The actual recording of the necessary information required to process an SCP claim for indemnity must be done on a separate, signed, RMA approved loss form such as the NCIS Production Worksheet. The insured may obtain a copy of the SCP Notice of Loss Form from either an insurance provider representative or their agent. The insured will fill out this form, and attach appropriate production verification (i.e. settlement/summary sheets). If the insured has acceptable farm measurement service (as defined in the 1998 LAM, paragraph 95) for the appropriate crop year, they are to attach this as well. In all cases the insured must attach copies of maps identifying each field, crop, and acreage by loss unit. The insured must sign the completed form, include attachments, and deliver to their agent or appropriate insurance provider representative as instructed by the insurance provider.

The agent may facilitate the SCP by accepting the notice of loss, obtaining FSA maps, and explaining the process and notice of loss form questions to the insured. The agent may serve as a collection point for the information required from the insured. The agent may forward the SCP Notice Of Loss Form and attached materials to the insurance provider. The agent MUST NOT mark settlement/summary sheets, mark maps, provide or calculate production to count, verify acreage, or complete any RMA approved loss forms (i.e. NCIS Production Worksheet) for the insured.

An authorized insurance provider representative will determine whether or not the claim qualifies for the SCP. If it is determined that the insured DOES NOT qualify for the SCP, the claim must be assigned to an adjuster for handling in the traditional manner requiring an onsite inspection. If it is determined that the insured DOES qualify for SCP, a claims representative will fill out a production worksheet(s) with the appropriate information as provided on, or attached to, this form by the insured. The claims representative is to make phone contact with the insured, to advise of receipt of the SCP notice of loss form and supporting attachments, explain the SCP process, ask any additional questions, and answer any questions from the insured before mailing the final loss form(s). The insured is to be instructed to examine the production worksheet(s) for errors, then if correct to sign, date, keep a copy and mail original(s) for processing as directed by the claims representative.

This form is available to NCIS member companies as an optional method of implementing the SCP. Reinsured companies may submit their own SCP forms and procedures to RMA for approval. If you have Internet access you may visit our web site at www.ag-risk.org, choose Products/Services and get the order form and list of available material or you may place your orders directly with Donna Bryan at NCIS (800-951-6247).

Dave Hall, MPCI Director

# EXHIBIT 4