**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL CROP INSURANCE SERVICES, INC.<br><br>            Plaintiff<br><br>    v.<br><br>OCCIDENTAL FIRE & CASUALTY COMPANYOF NORTH CAROLINA and CROP1 INSURANCE DIRECT, INC. d/b/a CROP1 INSURANCE, INC.<br><br>            Defendants | Civil Action No. 1:05cv01417<br><br>Judge: Richard W. Roberts |

**REPLY MEMORANDUM IN SUPPORT OF
CROP1'S MOTION TO DISMISS OR FOR CHANGE OF VENUE**

NCIS, in its response to Crop1's motion to dismiss or for change of venue, has blatantly misrepresented the facts and the law, and then stretched common sense, to try to keep this case in the District of Columbia. NCIS' arguments lack merit and should be rejected.

**I.  PLAINTIFF'S FIRST AMENDED COMPLAINT AGAINST CROP1 SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION.**

    **A.  Crop1 does not, contrary to NCIS's contention, have a contract with a federal agency.**

NCIS tries to support this Court's jurisdiction over Crop1 by claiming that Crop1 has a contract with the Federal Crop Insurance Corporation ("FCIC"). *See* NCIS Resp. Br. at 4 (referring to "Defendants' FCIC contract"); NCIS Resp. Br. at 15 ("The SRA to which Occidental and Crop1 are parties . . ."). NCIS, however, fails to cite any evidence to support that claim, and for good reason — it is false. Crop1 has no Standard Reinsurance Agreement ("SRA") or other contract with the FCIC, the Risk Management Agency, the United States Department of Agriculture, or with any other federal agency. *See* Reply Affidavit of William T.

Rose, Jr. at ¶ 2. The SRA to which NCIS refers is an agreement between an insurer – in this case Occidental – and the FCIC.

### B. Even if Crop1 *had* a contract with a government agency, or had extensive contacts with government agencies, jurisdiction over Crop1 would still be inappropriate.

Even if Crop1, as Managing General Agent for Occidental Fire & Casualty Company of North Carolina, were somehow declared to be a party to the SRA, or otherwise had extensive contacts with federal agencies, it still would not support this Court's jurisdiction over Crop1 pursuant to the "government contacts exception" to personal jurisdiction. A substantial body of caselaw makes clear that a party's interaction with the federal government does not give District of Columbia courts jurisdiction over foreign entities. As the D.C. Court of Appeals has explained,

> [the] rationale for the "government contacts" exception to the District of Columbia long-arm statute does not hinge upon the wording of the statute. Rather, it finds it source in the unique character of the District as the seat of national government and in the correlative need for unfettered access to federal departments and agencies for the entire national citizenry. **To permit our local courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality not only would pose a threat to free public participation in government, but also would threaten to convert the District of Columbia into a national judicial forum**.

*Dooley v. United Techs. Corp.*, 803 F. Supp. 428, 434 (D.D.C. 1992) (emphasis added); *see also Hughes v. A.H. Robbins Co.*, 490 A.2d 1140, 1145 n.4 (D.C. App. 1985) (activities which are conducted in the District solely for the purpose of gathering information from the federal government are not 'contacts' within the meaning of *International Shoe* and its progeny); *Siam Kraft Paper Co. v. Parsons & Whittemore, Inc.*, 400 F. Supp. 810, 811 (D.D.C. 1975) (under the government contacts exception, the issuance of a grant by a federal agency was not enough to

confer personal jurisdiction in the District of Columbia even though the project proponents traveled to the District and negotiated with federal officials in the District for the grant funds). *Envt'l. Research Int'l v. Lockwood Greene Eng'rs*, 355 A.2d 808, 812-13 (D.C. App. 1976) (no jurisdiction despite defendant's extensive contacts with federal government agencies where defendant is 1) incorporated in another state; 2) is not authorized to do business in the District; 3) does not maintain an office or agent in the District; and 4) does not perform work or solicit work in the District).

As such, even if Crop1 were a party to the SRA, that agreement alone cannot provide a basis for jurisdiction over Crop1. Indeed, the congressional testimony of Crop1's CEO, apparently relied on by NCIS, is exactly the type of first amendment expression that this exclusion was designed to address. *See Dooley*, 803 F. Supp. at 434.[1]

NCIS has cited no authority to exclude the SRA from this clear rule. Indeed, NCIS fails to cite a <u>single</u> <u>case</u> which purports to recognize jurisdiction over a foreign entity on this basis. Instead, NCIS cites to two irrelevant cases. The *Rain Hail Ins. Service, Inc. v. Honor* case cited by NCIS on page 5 of its brief relates to the applicability of 41 USC § 607 — the Federal Contracts Dispute Act — something that plainly is not at issue here. Similarly, the *American Growers Ins. Co. v. FCIC* case, also cited on page 5 of NCIS' brief, says nothing about whether

---

[1] NCIS characterizes Crop1's statement that it has "almost" no contact at all with the District of Columbia and no "meaningful" connection to the District as "highly ambiguous, subjective, and less than straightforward." (NCIS Resp. Br. at 3) It is nothing of the sort. The qualifications were made because, as Crop1 made clear in its initial brief, it conducted lobbying activities, but no business activities, in the District of Columbia. Further, as was made clear in *Dooley*, such activities do <u>not</u> constitute "doing business" and do not warrant the exercise of personal jurisdiction over a foreign corporation.

~CHGO1:30670557.v1

the existence of an SRA is an exception to the government contacts exception to jurisdiction. *See* 210 F. Supp. 2d 1088 (S.D. Iowa 2002).[2]

NCIS' inability to cite to relevant authority is telling. NCIS has no basis to support this Court's jurisdiction over Crop1.

### C. Crop1's Passive Website Does Not Provide Grounds For Personal Jurisdiction Over Crop1 And Is Not "Transacting Business" In The District.

Next, NCIS tries to base jurisdiction on the fact that Crop1 maintains a website. Tellingly, however, NCIS fails to link the law it cites to any particular facts surrounding Crop1's website. Indeed, the very cases cited by NCIS reveal the flaw in this portion of its personal jurisdiction argument. As the US Court of Appeals for the DC Circuit made clear in its holding in *Gorman v. Ameritrade Holding Corp.*, a company is **not** transacting business in the District when it does no more than maintain a website in that jurisdiction that is accessible to the public. 293 F.3d 506, 512 (DC Cir. 2002). While the court found jurisdiction on the facts in that case, it also specifically distinguished the case it was deciding from a case where the court found that there was no jurisdiction. *Id.* (citing *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000)).

The distinguishing factor was simple: where, as in *Gorman*, local residents used the website to open accounts, transmit funds, and actually consummate securities trades or other business transactions in the District, jurisdiction existed. Where, however, as in *GTE* and this case, customers or web browsers can simply access information about a business but are not allowed to transact business or do not transact business from the District, there is no personal

---

[2] Additionally, NCIS' reliance on the *Rain Hail* case appears to violate the prohibition against citing to unpublished authorities as precedent. Fed. Cir. R. 47.6.

jurisdiction. *Id.* As the *GTE* court made clear, there is no basis for jurisdiction simply because a website is accessible in a particular location. 199 F.3d at 1350. Indeed, in that case, this Court strongly rejected plaintiff's attempt to assert jurisdiction based on such a website, calling it a "far-fetched" theory that "simply cannot hold water" which, if accepted, "would shred . . . constitutional assurances out of practical existence." *Id.* (emphasis added).

Such a claim is far-fetched in this case as well. NCIS fails to cite evidence supporting any suggestion that Crop1's website permits District of Columbia residents to use Crop1's website to purchase insurance to secure a District of Columbia risk. NCIS' omission is not surprising. No transaction of a District of Columbia risk can be consummated over Crop1's website. As Crop1 is not authorized to write insurance in the District of Columbia, its website has security features that ensure no such transaction can occur. The only transactions that can be consummated over the website are for risks located in states where Crop1 is authorized to do business — which does not include the District of Columbia. Further, Crop1 does not advertise this website in the District of Columbia, but only advertises the states in which it is authorized to write insurance. Beyond all that, Crop1 has never insured any risk in the District of Columbia, through its website or otherwise, and has never sold an insurance policy or any other product or service to anyone located in the District of Columbia, again, through its website or otherwise. Rose Reply Aff. at ¶¶ 3-4.

> **D.  The Fact That Occidental Is Subject To Personal Jurisdiction In The District Has No Bearing On Whether Crop1 Is Subject To Personal Jurisdiction There As Well.**

NCIS' equally meritless is its argument that Crop1 is subject to jurisdiction in the District of Columbia because Occidental may be subject to jurisdiction in the District. (NCIS Resp. Br. at 8). Crop1 was named as a separate defendant in this case. It is entitled to the same statutory and

constitutional protections that are provided to any other party. *E.g.*, *GTE New Media Services, Inc.*, 199 F.3d at 1347 (even where the long-arm statute has been satisfied, a plaintiff must still show that the exercise of personal jurisdiction over a foreign entity is within the permissible bounds of the Due Process Clause). Crop1 is aware of no principle of law, and NCIS has cited none, that strips an agent of its statutory and constitutional rights simply because it is an agent of another entity that has a registered agent in that jurisdiction (albeit, another entity that also conducts no business in that jurisdiction, as Occidental has also demonstrated its lack of business of activity in the District). Such a maxim would clearly result in the unconstitutional harassment of agents in far distant forums.

Crop1 has no connection to the District sufficient to support personal jurisdiction. This action should be dismissed.

## II.   NCIS HAS NOT REBUTTED CROP1'S ASSERTION THAT THE DISTRICT IS AN INCONVENIENT FORUM.

Crop1, in its initial brief, demonstrated why the District is an inconvenient forum. NCIS has not rebutted that point, but instead asserts that there are several *other* states in which the case plausibly could be brought. The possible existence of other forums is not a reason to bring or keep the case in the District of Columbia. Crop1 will, however, address one aspect of NCIS' response. NCIS claims that its choice of forum should be granted almost decisive weight when compared with other factors. (NCIS Resp. Br. at 10-12). It is wrong.

As explained in Crop1's memorandum in support of its motion to dismiss and in Occidental's filings, the plaintiff's choice of forum is granted <u>less</u> deference in a section 1404(a) transfer than it is at common law, and more importantly, a non-resident plaintiff's choice of forum is granted still less deference. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56

6

(1981). Moreover, noticeably absent from its attempt to cling to the District of Columbia is any explanation whatsoever from NCIS as to why it chose the District of Columbia for this action. NCIS has never answered the obvious question: why sue here?

NCIS' failure to answer this question is telling. This case has no connection whatsoever to the District. There is not a single allegation that Crop1 or Occidental has breached any agreement with the federal government or failed to comply with any federal regulation governing their businesses. There is not a single allegation that Crop1 has any business activity in the District of Columbia. There is not a single allegation tying this lawsuit to any activity alleged to have occurred, or any damages alleged to have been suffered, anywhere in this jurisdiction. Crop1 and Occidental have offered a detailed explanation about why the District is manifestly inconvenient for this litigation.[3] NCIS at least should have explained why this is not a case where the plaintiff has succumbed to its "temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to [itself]." *See Pain v. United Technologies Corp.*, 637 F.2d 775, 783 (D.C. Cir. 1980). It failed to do so.

Accordingly, and for all of the reasons set forth in Crop1's initial brief, even if this Court had jurisdiction over Crop1, this matter should be transferred because the District of Columbia is an extremely inconvenient forum. 28 U.S.C. § 1040(a).

### III.  CONCLUSION.

For the foregoing reasons, and for the reasons set forth in Crop1's Motion to Dismiss or for Change of Venue, and in Crop1's initial, supporting memorandum of law, Crop1 requests entry

---

[3]  Although its brief attacks Crop1's proposal to litigate this case in Iowa as opposed to North Carolina, Nebraska, or Wyoming, NCIS' conspiracy theories deserve no response other than to reiterate that Iowa is the location of Crop1's offices, the state in which the majority of Crop1 hail policies were submitted and presumably is the state where any alleged wrongs occurred in this case. (*See* NCIS Resp. Br. at 11).

of an order dismissing the First Amended Complaint for lack of subject matter jurisdiction or, alternatively, transferring this action to a more convenient forum.

September 2, 2005

Respectfully submitted,

Of Counsel:

David E. Mendelsohn
(*Pro Hac Vice admission pending*)
Kenneth L. Schmetterer
(*Pro Hac Vice admission pending*)
Michael Kasdin
(*Pro Hac Vice admission pending*)
DLA Piper Rudnick Gray Cary US LLP
203 N. LaSalle Street, Suite 1900
Chicago, Illinois 60601

            /s/
Deborah Meshulam (D.C. Bar No. 495355)
Cristen E. Sikes (D.C. Bar No. 473461)
DLA Piper Rudnick Gray Cary US LLP
1200 Nineteenth Street, NW 7th Floor
Washington, D.C. 20036-2412
TEL: 202-861-3900
FAX: 202-689-7612

Attorneys for Defendant
Crop1 Insurance Direct, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of September, 2005, I caused a copy of the foregoing Reply Memorandum In Support Of Crop1's Motion To Dismiss Or For Change Of Venue, to be served on the following electronically and by first-class U.S. mail, postage pre-paid:

Michael E. Tucci
Stinson Morrison Hecker LLP
1150 18th Street, N.W. Suite 800
Washington, D. C. 20036-3816

Attorney for National Crop Insurance
Services, Inc.

Michael S. Nadel
McDermott Will & Emery LLP
600 13th Street N.W.
Washington, D. C. 20005

Mary Hulett
Ragsdale Liggett P.L.L.C.
P. O. Box 31507
Raleigh, NC  27622-1507

Attorneys for Occidental Fire & Casualty
Company of North Carolina

                                                                           /s/
                                            Kenneth L. Schmetterer